70 So.2d 239

**CLANCY LUMBER CO., Inc.**

v.

**HOWELL et al.**

**6 Div. 247**

Supreme Court of Alabama.

Jan. 21, 1954.

Curtis, Maddox & Johnson, Jasper, for appellant.

Posey & Posey, Haleyville, for appellees.

LIVINGSTON, Chief Justice.

Travis Howell and Joe B. Howell, appellees, instituted proceedings against Clancy Lumber Company, Inc., the appellant, in the Circuit Court of Winston County, Alabama. Said action entailed three counts. The first count claimed $1,428 for "work and labor done for the defendant by the plaintiffs." Count Two claimed the same amount due "by account on the first day of June, 1949." The third count claimed the additional sum of $50,000 for the alleged breach of a contract.

Appellant filed a demurrer to the complaint.

Appellees, on the first day of the trial, filed an amendment to their original complaint, the amendment striking out original Count Three while adding Counts Four, Five and Six. The three new counts claimed $20,000 for the alleged breach of an oral contract which appellees claimed to have existed between them and appellant. The appellant's answer to the complaint, as amended, stated that said oral contract, if it existed, was void and unenforceable as being within the statute of frauds.

After hearing the evidence, the court gave the affirmative charge in favor of appel-

lant upon Counts Four, Five and Six. Thus, the case went to the jury on two counts, the first claiming $1,428 "for work and labor done," and the second claiming an identical sum due "by account."

This appeal was duly instituted subsequent to the jury's verdict of $1,428 in favor of appellees.

Clancy Lumber Co., Inc., operates a lumber business in the Bankhead National Forest. Said company has a contract with the U. S. Forestry Department to do "selective cutting" within that area, the appellant being required to cut or have cut all trees which are marked by representatives of the U. S. Forestry Department. Such cutting must be completed regardless of the merchantability of timber so marked. Appellant operates by having independent contractors cut out certain strips. The fact that these contractors are independent contractors is not disputed.

An oral agreement was entered into between Jim Reynolds, an officer of appellant, and Joe B. Howell, one of the appellees, during October, 1948. Howell testified that he meant for his brother, Travis, to have been included within the agreement also. The main point in controversy relates to the terms of said agreement. Appellant's testimony tended to show that Joe B. Howell bought the contract which Elbert Ayres and Felton Berry then had with appellant, and that Howell was to operate in the same manner and under the same terms that Ayres and Berry had been operating. The agreement was one terminable at the will of either party, to last as long as Howell could get along with the appellant and the U. S. Forestry Service. There is much conflict, however, as to the manner in which appellees were to receive payment. Appellant's evidence is to the effect that the appellees were to receive an amount equal to 30% of the average net sales on all lumber for the month preceding. To the contrary, appellees claimed that the oral contract guaranteed a minimum of $21.50 per thousand feet of lumber, should 30% of the net average amount to any lesser sum. During the trial of this case, appellees admitted that the appellant at all times paid them upon a basis of 30% of the net proceeds for the preceding month. Thus, the main question to be determined was: Did or did not the contract call for any payment other than 30% of the net average for the month preceding?

Appellees offered a considerable amount of testimony relating to their claim that they were damaged by being forced to quit while they had a substantial amount of logs already cut. Appellees stated that they were forced to leave them in the woods and that Clancy Lumber Company refused to take them.

Appellant offered testimony by the U. S. Forester that in the spring of 1949, and immediately prior to the time the appellees quit their operation, he (the forester) reported to appellant that the work of the appellees was not satisfactory and that it was the worst he had found in the forest.

Appellant also showed that in March of 1949 the market for oak lumber fell to such a point that the logging contractors, including Travis Howell, and the appellant held a meeting, and it was agreed that it would be to the advantage of both groups (loggers and lumber company) to stop bringing in the low grade oak timber, even though it still had to be cut if so marked by the Forestry Department. Said evidence was to the effect that all agreed it would keep their average up on the pine and poplar lumber to leave the low grade oak in the woods while the price of the former was still fairly high. Appellant's evidence shows that appellees did not object to the new plan agreed upon by the loggers.

Shortly after the meeting between the logging contractors and the company representatives, however, appellees quit hauling logs. The record shows that the appellees even suggested to other loggers that they also should quit hauling operations.

Subsequently, the appellees again began to haul logs to appellant's mill. Shortly thereafter, however, Jim Reynolds, an officer of appellant, called in Travis Howell. The evidence shows that Howell was advised that the work of appellees was not satisfactory to Clancy Lumber Company,

that it was not satisfactory to the U. S. Forestry Department, and that the agreement between appellant and appellees, which had always been terminable at the will of either party, would be terminated. Appellees were advised at the same time that they would have a reasonable length of time in which to wind up their business and to clear the areas that they had already cut.

Testimony of appellant is to the effect that the appellees were allowed more than ample time in which to haul out logs then already cut, but that the appellees did not do so. On the other hand, appellees testified that appellant had told them not to haul in any more oak timber, and had refused acceptance of such wood. Thus, appellees stated, in effect, that they were justified and excused from the completion of full performance under their contract as to the oak timber which they then had already cut and bunched, or had merely cut, but had never hauled in to the appellant's mill.

To the contrary, Monroe Lee, a witness for the defense, testified that he had purchased not only the logging equipment of appellees, but that the appellees had also sold him the labor upon logs then already cut but still in the forest. In rebuttal, Travis Howell testified that the labor upon said logs was not included within the sale of the logging equipment.

Appellant's Assignment of Error No. 2 states the following:

"2. The Court erred in failing to instruct the jury not to consider the argument of appellees' counsel which was: 'The Howells mortgaged their home to buy that equipment,' objection being duly made to said argument. (R. p. 145)"

Counsel for appellant did make a timely objection to said statement, and at the same time moved for a mistrial. The court overruled appellant's motion, to which ruling appellant duly excepted.

The court's ruling was only upon the motion for a mistrial; there never was a ruling upon the objection. Appellant nev-

er requested the court to instruct the jury not to consider the statement in controversy. Thus, there was never a ruling of the lower court to which Assignment of Error No. 2, as framed, can be directed. The functions of this court in its appellate character are strictly confined to the action of trial courts upon questions which are presented to and ruled upon by them. We cannot put a trial judge in error for failure to rule on a matter which has never been presented to, nor decided by, him. Lunsford v. Dietrich, 93 Ala. 565, 9 So. 308.

During the trial, appellant offered evidence for the purpose of showing the rate of depreciation on logging machinery upon which appellees claimed they had lost money. Appellees stated that they had to sell the machinery upon short notice after being released by appellant. Inasmuch as the trial judge granted the affirmative charge in favor of appellant on the only count which concerned the value and sale of said machinery, there is no merit in Assignment of Error No. 5.

Assignment of Error No. 6 is based upon the fact that the court sustained appellees' objection to evidence offered by appellant for the purpose of showing that the appellees, in effect, went on strike immediately before appellant terminated their agreement. Since the contract was terminable at the the will of either party, the appellants had complete power and right to release the appellees at any time upon becoming dissatisfied. Therefore, whether or not appellees went on strike was not relevant or material. The court correctly refused the admission of such evidence.

For like reasons, Assignment of Error No. 7 is without merit.

Assignment of Error No. 8 states that it was error for the trial court to allow Travis Howell, after due exception of appellant, to testify that he and his brother, Joe B. Howell, had a "contract" with the appellant. Here, the court did not err, for it was admitted by both parties during the course of the trial that a contractual relationship did exist. The only questions

presented for the jury's determination concerned the terms of the oral contract, and the effect of said contract, as found, upon the controversy at bar.

 Joe B. Howell was allowed to testify, over the objection of appellant, that one Jesse Smith, another logging contractor, had told him that he (Smith) would have sued appellant also for timber unpaid for were it not for the fact that such action would have caused Smith to lose his job with appellant. Said testimony by Howell was hearsay, immaterial upon the issues at bar, and was obviously offered for the purpose of prejudicing the jury against appellant. However, appellant's counsel had previously cross-examined Howell as to what had been said in that same conversation. Assignment of Error No. 9, therefore, is without merit, for the question objected to only called for the balance of a conversation, a part of which had been brought out by appellant. Where a part of a conversation has been elicited from a witness on cross-examination, the opposite party has the right, on redirect examination, to call for the whole conversation, or to inquire into all the facts and circumstances connected therewith, although they may not be admissible as independent testimony. Day v. Downey, 256 Ala. 587, 56 So.2d 656; Catts v. Phillips, 217 Ala. 488, 117 So. 34; Cornett v. Brooks, 206 Ala. 566, 90 So. 787; Allen v. State, 134 Ala. 159, 32 So. 318.

█ During the trial, appellant's counsel asked Joe B. Howell whether one Ayres and one Berry, or either of them, had discussed with Howell the basis upon which Ayres and Berry had been paid while working for appellant. Appellees objected that such evidence would be incompetent, irrelevant and immaterial. The court sustained said objection, to which appellant duly excepted. In sustaining the objection, the trial court committed no error. What Ayres and Berry were paid according to their contract with appellant was in no manner relevant to the issues at bar. Only the terms of the contract between the appellant and the appellees, and payment thereunder, can affect the outcome of this case. Any answer to the question objected to would have been irrelevant and immaterial. Subsequent to the court's ruling, counsel for appellant stated that the theory upon which said question was asked was to show that Ayres, Berry and appellees were all paid upon the same basis, as was evidenced by the statement of November 17, 1948. The statement spoke for itself. Assignment of Error No. 10, therefore, is not well taken.

█ Assignments of Errors Nos. 11, 12 and 13 concern requested written affirmative charges of appellant, all of which were denied by the trial court. The evidence was sufficient to take the case to the jury. In denying said requested charges, the court did not err.

While being cross-examined by appellant's counsel, Clayton Sanders denied that Leon Clancy had offered to stand good for the Howell Brothers' debt to said witness, the debt having been incurred upon Sanders' sale of logging machinery to appellees. Later in the trial, Leon Clancy, on direct examination, was asked by appellant's counsel whether he had made any such statement to Sanders. This question was asked solely for the purpose of impeaching Sanders. Appellee's objection to the latter question was sustained by the court, and appellant duly excepted.

 Johnson v. Armstrong, 97 Ala. 731, 12 So. 72, clearly holds that a party on cross-examination may interrogate a witness as to any matter relevant to the issue, without vouching for his credibility, or forfeiting the right to assail or impeach him as the witness of his adversary. Said doctrine has more recently been followed in Nunnally Co. v. Bromberg & Co., 217 Ala. 180, 115 So. 230, and Carter v. State, 191 Ala. 3, 67 So. 981. However, inasmuch as the judgment rendered was only upon Counts 1 and 2, which in no manner concerned the value or sale of logging machinery, the answer to the question to which objection was sustained cannot be said to have been material to the issues as submitted to the jury. As a general proposition, if a witness on cross-examination be interrogated as to a matter wholly immaterial to any issue in the case, the party calling for

such evidence is concluded by the answer and cannot impeach the witness by contradicting such answer. Carter v. State, 133 Ala. 160, 32 So. 231. Yet a distinction has been drawn between immaterial matter affecting the general character of the witness, and that which affects his credibility in the particular case. In the latter case, it becomes allowable to contradict such statements. Whitsett v. Belue, 172 Ala. 256, 54 So. 677; Jones v. State, 141 Ala. 55, 37 So. 390; Fincher v. State, 58 Ala. 215; McHugh v. State, 31 Ala. 317; Bullard v. Lambert, 40 Ala. 204. See, also, Belcher v. Hubbard, 32 Ala.App. 95, 21 So.2d 850; Estes v. State, 140 Ala. 151, 37 So. 85. We are of the opinion that the question in controversy, stated for the purpose of impeachment, falls within the latter exception. Within a comparatively short time prior to the trial of this case, the witness Sanders was owed a substantial sum by appellees on their logging equipment. By the time of the trial, according to Sanders' own testimony, all of the said sum had been paid him by appellees. He refused to state exactly when the debt was paid. There is reasonable doubt that such full and prompt payment by appellees to the witness shortly before the trial very possibly influenced his testimony. Sanders later testified that Clancy had told him he would pay the appellees according to the sum they (appellees) now claim the oral contract to have been based upon. Any such bias or interest in the outcome of a case can be presented to a jury in order for it to better weigh the credibility of the witness. Leon Clancy, therefore, should have been allowed to answer whether or not he told Sanders that he would stand good for the Howell Brothers' mortgage. Clancy's testimony would have tended to impeach Sanders, who, in turn, testified contrary to appellant's version of the terms of the oral contract between appellant and appellees, upon which this suit is based. The court's refusal to allow such testimony, therefore, was reversible error. Assignment of Error No. 4 is well taken.

There are other errors assigned and argued by appellant. However, inasmuch as the case must be reversed for reasons already stated, it is unnecessary for this court to discuss and pass upon additional issues presented.

Judgment is reversed and the cause remanded.

Reversed and remanded.

LAWSON, STAKELY and MERRILL, JJ., concur.