142 So.2d 712

**LOUISVILLE & NASHVILLE RAIL- ROAD CO.**

**v.**

**D. W. GOTHARD.**

**6 Div. 495.**

Supreme Court of Alabama.

June 14, 1962.

143 So.2d 621

**STATE of Alabama et al.**

**v.**

**CITY WHOLESALE GROCERY CO., Inc.**

**6 Div. 768.**

Supreme Court of Alabama.

July 26, 1962.

Rives, Peterson, Pettus & Conway, Birmingham, for appellee.

———————◆———————

Lange, Simpson, Robinson & Somerville, Birmingham, for appellant.

LIVINGSTON, Chief Justice.

D. W. Gothard, the appellee, sued the Louisville and Nashville Railroad Company, the appellant, in the Circuit Court of Jefferson County, Alabama, claiming damages for personal injuries in the loss of an eye. The suit was brought under the Federal Employers' Liability Act, Title 45, U.S.C.A. § 51.

As amended, the complaint contained two counts, one and three.

Count One alleged, in substance, that plaintiff was employed by defendant as a machine operator or laborer, and that on November 26, 1957, he was employed in work in furtherance of interstate commerce, or directly, closely and substantially affecting such commerce. He alleged that on said occasion, he was struck in the left eye by a piece of steel, thereby sustaining various damages and injuries, including the loss of vision and surgical removal of his eye, and permanent impairment of his power to work and earn money. He further alleged that the damages catalogued were the proximate result, in whole or in part, of the negligence of the defendant in negligently failing to furnish him with goggles for the protection of his eyes while performing work assigned to him by his superior.

Count Three, as amended, was identical with Count One, except that it charged that his injuries were the proximate result, in whole or in part, of the negligence of the defendant in that an officer, agent or employee of defendant, acting within the line and scope of his employment, negligently caused, allowed or permitted plaintiff to cut bond wires from rails with a hammer and cleaver without the use of goggles to protect his eyes.

Defendant pled in short by consent the general issue, with leave, etc.

The trial of the cause resulted in a jury's verdict for the plaintiff in the sum of $50,500, and on which the trial court entered judgment.

Defendant's motion for a new trial was overruled and it appealed.

Only two matters, presented in several ways, are argued in brief for a reversal; one, an incident of the trial pertaining to an examination of a witness, and defendant's motion for a mistrial relative thereto, which will be discussed later; and, two, the question of the excessiveness of the verdict. Under our rules, all other assignments of error are deemed waived.

On the first question argued in brief, we will set forth only so much of the evidence as will clearly and fairly present the question for review. That evidence is virtually without dispute, and is, in substance, as follows:

Plaintiff, appellee, and his co-worker, one Bankston, were employed by the defendant, appellant, as machine operators. On November 23, 1957, plaintiff and Bankston were assigned, as laborers, to cut bond wires (a bond wire is a wire connecting, electrically, two rails so as to carry an electric impulse from one rail to another) from around some rails needed at another point. At the time they were assigned to this job, they were asked if they had goggles and they replied that they had none. Defendant's track supervisor told Foreman Wallace to get goggles for the plaintiff, which were at Parkwood, one-half mile away. The plaintiff and Bankston commenced to cut the bond wires without goggles and they were cautioned to be careful of flying chips of metal, but were not told not to work without goggles.

Foreman Wallace returned without any goggles and plaintiff and Bankston testified that when Wallace returned without the goggles, they assumed there were none. Plaintiff and Bankston cut the bond wires (using hammer and cleaver) from morning until shortly after noon, at which time the plaintiff was struck in the eye by a piece of metal chipped off when the hammer struck the cleaver. During the time up to the injury, Foreman Wallace, the defendant's agent, was nearby and saw plaintiff working without goggles, but never told the plaintiff to stop working until he procured some goggles. The plaintiff knew he should wear goggles for this type of work and was given safety rules when he was hired.

The Louisville and Nashville Railroad Company had a rule book which required goggles to be worn when "holding cleaver for cutting rails, bolts, nuts or other metal." It also contained "Special Rules for Foremen and Others in Supervisory Capacities," which provided, in part, as follows:

"A. *The prevention of accidents is the most important duty of a foreman.* Only to the extent that he succeeds in this respect will he be regarded as a successful foreman, no matter how favorable his record otherwise.

"B. A thorough knowledge of all of the rules in this book, a full compliance therewith, and *an exercise of a duty of supervision that will insure the men under them being familiar with and complying with all the rules, is a definite part of the duties of each foreman or other supervisory officer, and for this part of his duty he will, in case of accident, be held responsible.*

"D. Before men are put to work it must be seen that conditions are favorable for the safe performance of the job, and *all possible precautions must be taken to insure the continu-*

*ance of safe conditions."* (Emphasis supplied.)

Track Supervisor Butler testified that in his absence, Foreman Wallace had the responsibility for following the company's rules, to show the men how to do the work at some time or another before the men are allowed to go on the job, that prevention of accidents is the most important duty of the foreman, that if Foreman Wallace saw Gothard and Bankston cutting bond wire with a hammer and cleaver without goggles, it was his duty to stop them, and that Bankston and Gothard were the youngest men he had in his group.

The injection of testimony, or a question concerning it, showing the discharge of Foreman Wallace, and also plaintiff's co-worker Bankston, after the investigation of the accident to plaintiff, is the basis of defendant's motion for a mistrial, and is also grounds of defendant's motion for a new trial. The record discloses the following:

"REDIRECT EXAMINATION

"Q (BY MR. RIVES) Mr. Bankston, did you have to report for an investigation of this incident?

"A Yes, sir, I did.

"Q And following that investigation didn't they discharge Foreman Wallace and discharge you?

"MR. ROBINSON: Just a minute—

"A Yes, sir.

"MR. ROBINSON: Just a minute, I will have to ask for a mistrial. He certainly knows he can't try a case like that.

"MR. PETERSON: I can show him some law to the contrary, if the Court please.

"MR. ROBINSON: I disagree with you. It is an effort to prejudice the jury and I will have to ask for a mistrial.

"THE COURT: Gentlemen, I am going to sustain the objection to the question, and I am going to instruct you gentlemen that questions asked by counsel are not evidence in the case, nor remarks made by counsel during the course of the trial are not evidence in the case. But the evidence you are to consider is the evidence that comes to you from the witness stand or from witnesses or from documents legally introduced in evidence; and instruct you gentlemen not to consider the remarks or questions asked by counsel for the plaintiff that has been objected to, and they are excluded from your consideration, gentlemen.

"MR. ROBINSON: You overrule the motion?

"THE COURT: Overrule the motion.

"MR. ROBINSON: We except. I would like to—

"MR. PETERSON: May we have an exception to the ruling of sustaining the objection.

"THE COURT: Yes, sir.

"MR. ROBINSON: I would like the privilege of requesting the Court to ask the jury if they think they can expunge such a statement as that from their minds. I doubt that they can do it.

"THE COURT: I will overrule.

"MR. ROBINSON: We except.

"THE COURT: Anything further from this witness?

"MR. PETERSON: Sir?

"THE COURT: Anything further from this witness?

"MR. RIVES: No, sir.

Are you through?

"MR. ROBINSON: Yes, sir."

It is axiomatic, of course, that the appellant has the burden of showing prejudicial error in order to work a reversal of the cause. In the first place, the appellant did not object to the question "And following that investigation, didn't they discharge Foreman Wallace and discharge you?" but did move for a mistrial based on the asking of the question. Neither did the appellant move to exclude the answer "Yes, sir" to the foregoing question. In response to this situation, the trial court said: "Gentlemen, I am going to sustain the objection to the question." Later, counsel for the appellee asked the court: "May we have an exception to the ruling of sustaining the objection?" and the court replied: "Yes, sir."

■■■ The appellant is in no position to complain now of any ruling of the trial court except that overruling appellant's motion for mistrial. The question posed is whether or not the asking of the question was itself so highly prejudicial as to be ineradicable, and the further question if eradicable, did the trial court effectively eradicate it from the minds of the jury.

The record discloses that at a conference in the judge's chambers, and without the hearing or presence of the jury, the court stated concerning the incident referred to above:

"THE COURT: Well, it was my opinion my ruling was correct there in not admitting that testimony because it was testimony from a witness long after the accident, or the occurrence had occurred. And to admit such testimony that an employee or two employees had been fired over this thing by the defendant would not be legal testimony, but would have been prejudicial to the defendant, if it had been something that did not go the question of the acts of the agents or employees of the railroad so far as this plaintiff was concerned, but

was an investigation after the whole thing had occurred; an investigation of their own. We don't know what went into their minds or why they let them go. It might have been other things other than this thing on Wallace, I don't know. We don't know. I am just as confident now as I am when I made the ruling that that testimony would have been prejudicial to the defendant and would not be admissible testimony on behalf of the plaintiff. And I am going to let my ruling stand, and I might say to you it is my intention to try to eradicate from the minds of the jury any consideration of that statement in my charge that I propose to give. I don't mind telling you what I propose to cite to the jury as a sort of rehash of what I said to them yesterday is that the legal testimony comes to them from the witness stand, and not remarks or arguments of counsel; from testimony in the case. But they will be governed entirely by the evidence from the witnesses, and the legal documents in the case, and their verdict must be based on that evidence. Now, that will be my intention to so charge the jury as to that issue, specifically then because of the question asked and the motion for a new trial that was made.

"MR. ROBINSON: Mistrial.

"MR. RIVES: Mistrial.

"THE COURT: I mean mistrial."

In his oral charge to the jury, the trial court stated:

"Now, gentlemen, I might say to you at this time that you have heard the testimony of the witnesses placed on the stand and you would be governed by the testimony you hear from the witness stand and from any written evidence or documents that have been submitted for your consideration. You would not be permitted to speculate on the evidence, you would not be, for instance, entitled to speculate on what somebody else might say if they had been a witness. But you would take the testimony that comes to you from the witness stand that has been presented here for your consideration and you will decide the case from that evidence that you hear here. You will determine from this evidence here whether or not the plaintiff has made out his case, whether or not there was any negligence, whether or not there was any contributory negligence, what the damages were, and so forth. In other words, all of those things that have been discussed with you, are to be taken from the witness stand here, from the witnesses and the evidence submitted to you in the case."

Assuming, without deciding, that the question asked was improper and that the answer thereto was incompetent and illegal, was the situation created so prejudicial to the rights of the defendant as to be ineradicable, and if not ineradicable, did the trial court's action suffice to eradicate it?

The nearest approach to the issue involved is the opinion of this Court in Sanitary Market v. Hall, 223 Ala. 525, 137 So. 435. There, an action was brought against the Sanitary Market by a customer who alleged that an employee of defendant committed an assault and battery upon her by taking packages from her and holding her on a charge that she was trying to leave the market without paying for her purchase. During the course of the trial, plaintiff's attorney propounded to a witness the following question:

"I will ask you to state whether or not the cashier at that time told you that they had discharged that man because he was so mean to the ladies that came in the store."

The defendant's attorney made no objection or motion to exclude but asked the court to enter a mistrial. The trial court

refused to grant a mistrial and said to the jury:

"I will say this to you. You won't pay any attention to that statement because it is incompetent and is improper, and you won't be prejudiced thereby; if I thought you were, I would make a mistrial of the case. You just forget that."

In holding that the trial court did not err in not entering a mistrial, this Court said:

"The matter sought was not answered, and, if so, was not of the character of erroneous matter that was introduced by way of evidence or argument, held inflammatory or improper and ineradicably prejudicial."

See also Alabama Lime & Stone Co. v. Adams, 218 Ala. 647, 119 So. 853, and White Swan Laundry v. Blue, 223 Ala. 663, 137 So. 898.

We think the matter complained of was not so highly inflammatory or improper as to be ineradicably prejudicial.

Appellant also takes the position that the harmful effects of the matter complained of was not cured by the admonition of the court, and that the trial judge did not take sufficient, prompt and vigorous action.

We cannot agree. We think the admonition administered to the jury clearly demonstrated to the jury that they were not to consider the facts contained in the questions propounded by plaintiff's attorney.

■ Appellant also insists that the court excluded nothing but the question and left in the record the answer which appears to have been made in the midst of defendant's counsel's protests. But it is to be noted that defendant's counsel made no motion to exclude the answer or any effort to more completely invoke the power of the court to exclude by admonition the alleged improper matter. If appellant's counsel thought the admonition was inadequate and left appellant in the position of speculating on the verdict, he cannot now complain that the admonition was insufficient. Alabama Great Southern Ry. Co. v. Gambrell, 262 Ala. 290, 78 So.2d 619; Clancey Lumber Co. v. Howell, 260 Ala. 243, 70 So.2d 239; C. C. Hooper Cafe Co. v. Henderson, 223 Ala. 579, 137 So. 419; City of Birmingham v. Carle, 191 Ala. 539, 68 So. 22, L.R.A. 1915F, 797; Birmingham News Co. v. Payne, 230 Ala. 524, 162 So. 116; Alabama Fuel & Iron Co. v. Williams, 207 Ala. 99, 91 So. 879.

There is another reason why we think there was no error to reverse in the proceedings outlined above.

■ The order of a mistrial for such a cause as is presented in this record must be left largely to the discretion of the trial judge. Alabama Great Southern R. Co. v. Ensley Transfer & Supply Co., 211 Ala. 298, 100 So. 342.

It was said in Thames v. Louisville & Nashville Railroad Co., 208 Ala. 255, 256, 94 So. 487, 488:

"The trial court was present and was an eye witness to the proceedings and was in a position to observe the manner of counsel and the countenance and expression of the jury when the things complained of transpired. In other words, the trial court, when acting upon the motion, was in possession of data and circumstances which are not and could not be presented by the record to this court, and we cannot disturb the conclusion reached, unless we can say that it affirmatively appears from the great weight of the evidence and the surrounding facts and circumstances that this conduct did not influence the jury in the rendition of the verdict, either as to result or amount."

Moreover, the defendant did not except to any part of the court's oral charge to the jury, nor did it request any explanatory charge relative to the above matter.

We find no error to reverse on account of the matters above discussed.

Defendant argues strenuously that the amount of the verdict and judgment rendered thereon was excessive.

Plaintiff recovered a judgment for $50,500 as damages for the loss of his left eye, physical and mental pain and anguish, the loss of earnings, and the impairment of his ability to earn. He was 23 years old at the time he was injured and 25 years old at the time of trial, and had a life expectancy of 38.93 years. He had a high school education and was of average intelligence. At the time of his trial, his physical health was good, except for the loss of the eye.

The evidence tended to show that between the date of the injury and to the time of the trial he had lost earnings of some $4500. Evidence further tended to show that he would suffer at his present income (income at the date of the trial) a loss of $80 per month or more for a period of about 39 years. To replace his lost wages during this period would require some $35,000 to $45,000, computed on an annuity basis. These figures are not intended to be accurate, but approximately only. In addition, he is entitled to recover for physical, mental pain and anguish, and also including the discomfort and embarrassment of a glass eye.

We have held that the present value of a dollar, as compared with its value in former years, must be considered in determining whether the amount awarded by jury for personal injuries is excessive. Louisville & N. R. Co. v. Tucker, 262 Ala. 570, 80 So. 2d 288; Southern Ry. v. Stallings, 268 Ala. 463, 107 So.2d 873; Brandwein v. Elliston, 268 Ala. 598, 109 So.2d 687.

In his oral charge, the trial court adequately instructed the jury on contributory negligence, if any, by the plaintiff as it relates to trials had under the Federal Employers' Liability Act. There were no exceptions reserved to this part of the charge.

Appellant claims that the verdict resulted from prejudice, partiality or passion.

Our review of this contention has been stated in many of our cases. That view was aptly stated in Louisville & N. R. Co. v. Tucker, supra, and repeated in McLaney v. Turner, 267 Ala. 588, 104 So. 2d 315, and is as follows:

"Considering the elements of damage in the case and remembering that the authority vested in the courts to disturb the verdict of the jury on the ground of excessive damages is one which should be exercised with great caution and discretion, we are constrained to hold that the ruling of the court refusing to set aside the verdict should be upheld. We are unable to say that the amount of the verdict is the result of passion, prejudice, partiality or corruption on the part of the jury. We do not feel authorized to set the verdict aside especially in the face of the refusal of the trial court to do so after he heard the evidence and saw the plaintiff before him. Central of Georgia Ry. Co. v. White, 175 Ala. 60, 56 So. 574."

After a careful study of the entire record relative to the question of the excessiveness of the verdict, we are unable to say that the amount of the verdict is a result of passion, prejudice, partiality, or corruption on the part of the jury. The motion for a new trial was overruled without error, and it is our opinion that the judgment of the lower court should be affirmed.

Affirmed.

LAWSON, MERRILL and COLEMAN, JJ., concur.