ADAMS, Justice.
First Real Estate Corporation of Alabama, Inc., appeals from a summary judgment entered in favor of Imogene B. Spiller. First Real Estate sued Spiller for a real estate broker’s commission on property sold by Spiller to John Drummond. We conclude that the trial court correctly entered the summary judgment for Spiller, because the evidence indicates that First Real Estate was not the procuring cause of the sale of the property by Spiller to Drum-mond, and we adopt the trial court’s judgment as the opinion of this Court:
“Viewing the facts most favorably to plaintiffs, as the Court is bound to do in assessing a motion for summary judgment to which they are opposed, the Court considers the following undisputed facts to be dispositive:
*955 “Murray H. Gibson (‘Gibson’) was apprised of the availability of the property for sale by Richard Turner, an acquaintance of his who, in turn, had heard about the availability of the property from Dr. E.W. Strickland. Gibson contacted Callaway, whom he learned about from Turner. Callaway had the right from the defendants to try to find a buyer for the property at $1,200 per acre. The total acreage was 1,033.46 acres, so the required purchase price would have to have been $1,240,152.00. Under Calla-way’s version of the agreement between him and Mike Spiller, if Callaway obtained a purchaser for the property at that price, First Real Estate would have been entitled to a commission of ten percent. Callaway never generated an offer from anyone to purchase the property for $1,240,152.00. Gibson did offer through Callaway to pay $25,000 to obtain an option whereby he or his heirs or assigns could purchase the property at any time within sixty days after the option agreement had been signed by all of the sellers, for a purchase price of $1,200,000.00, the exercise of said option to be solely at the discretion of the op-tionee. Gibson intended at this point in time to buy the property for himself if he exercised the option. It is undisputed that this option was rejected by the Spiller family. Thereafter, Gibson was contacted by another real estate broker, Monroe Payne (‘Payne’), who advised he had a prospect for purchasing the property and Gibson decided to try to pursue that possibility. Now functioning as a middle man or broker for these other parties, Gibson tendered an option agreement to the landowners whereby Gibson or his heirs or assigns would have the right, for thirty days, to elect to purchase the property for $1,400,000.00. Payne, in turn, sold the option to Drum-mond, the ultimate purchaser. Neither Payne nor Drummond ever had any contact or dealings with Callaway or First Real Estate.
“Whatever might have been the content or legal effect of the contractual arrangement which the plaintiffs assert existed between them and the defendants, the same did not grant the plaintiffs either an exclusive agency contract or an exclusive right to sell contract. Consequently, the defendants retained the right to sell the land themselves, or through a second broker, subject only to the potentially intervening right of First Real Estate to receive a commission for having delivered a buyer ready, willing, and able to purchase the property upon the terms specified by the defendants, or having otherwise served as the procuring cause of an ultimate purchaser. First Real Estate never produced a buyer ready, willing, and able to purchase upon the defendant’s terms, as those terms are contended for by Callaway, to-wit, $1,200 an acre. Rather, what was tendered by Callaway was an offer for an option whereby the optionee would obtain a sixty-day right to purchase the property for $40,152.00 less than had been specified, to-wit, for $1,200,000.00. Subsequently, after Gibson decided to convert from a potential direct purchase to a middleman ‘broker’ of sorts, he made direct contact with Mike Spiller and advised him that he was interested in buying the property, not for himself but as a front for an unidentified third party. Mike Spiller advised Gibson that it would take $1.4 million net to the sellers, with no commission and with the sellers retaining fifty percent of the minerals, to buy the property. An option was granted by the landowners to Gibson upon those terms, but after he sold the option to Payne for $47,000.00, there’s no evidence to suggest that he thereafter had any further interest in the matter, or participated in any way in the successive transactions. The option was sold by Payne to Drummond, who then exercised the same and purchased the property. In effect, after the first option was rejected by the Spiller family, and Gibson subsequently learned that third parties were interested in purchasing the property, he became a competitor to Callaway and himself acted in the role of a broker. It was in that capacity that Mike Spiller understood Gibson was dealing in connection with the $1,400,000.00 option. The purchaser of that option, Payne, had
*956 no dealings with Callaway. The purchaser of the option from Payne, Drummond, had no dealings with either Callaway or Gibson.
“Under the above-described circumstances, the Court considers that any ‘connection’ between Callaway and Drummond is too attenuated to permit the interpretation that Callaway was a procuring cause of Drummond as a purchaser. Gibson learned of the availability of the property from Turner. Calla-way did not protect himself vis-á-vis his dealings with the defendants by obtaining any sort of exclusivity for his status. Rather, the defendants were left totally free under the law of Alabama to promote and sell the property by and through, and to, any other person whatsoever, subject only to a commission obligation to First Real Estate if it procured a purchaser ready, willing, and able to buy the property on the terms specified by the defendants. It is undisputed that no such purchaser was procured as of the time the tendered $1,200,000.00 option was rejected by the Spiller family. Callaway did not protect himself vis-a-vis his dealings with Gibson, and Gibson was therefore free to transform his involvement from that of a prospective purchaser to that of a middle man ‘fronting’ for a third party having no prior contact with the situation....
“In conclusion, the Court finds, as a matter of law, that plaintiff cannot be deemed the procuring cause of the ultimate purchase by Drummond, and such ‘missing link’ is fatal to all of plaintiff’s theories of recovery. Accordingly, it is considered by the Court, and ordered, adjudged, and decreed by the Court, that summary judgment is herein entered for the defendants....”
See generally Perdue v. Gates, 403 So.2d 165 (Ala.1981).
AFFIRMED.
HORNSBY, C.J., and ALMON, STEAGALL and INGRAM, JJ., concur.