In September 1989, OEM Components, Inc., filed a complaint against Tri-Tube, Inc., seeking damages for breach of contract. Tri-Tube answered and counterclaimed, seeking damages for breach of contract. Following the presentation of oral testimony, the trial court entered a final judgment for OEM, awarding OEM damages for breach of contract and accrued interest. The trial court denied relief to Tri-Tube on its counterclaim. Tri-Tube filed a post-judgment motion, which was denied by operation of law. Tri-Tube appealed to the Supreme Court, which transferred the case to this court pursuant to Ala. Code 1975, § 12-2-7(6).
Tri-Tube argues three issues on appeal: (1) whether the trial court erred in interpreting the contract; (2) whether the trial court erred in awarding $112,622.35 damages to OEM and $34,765.41 prejudgment interest to OEM; and (3) whether the trial court erred in excluding certain evidence regarding OEM's contract with another party.
In November 1983, Tri-Tube and OEM entered a contract whereby OEM would act as an exclusive selling agent for Tri-Tube for a specific territory. The contract provided that Tri-Tube would pay OEM 5% of the net invoice price of "all products and services" sold by OEM. Tri-Tube agreed to pay half of that commission if "products and services are sold outside the territory but for shipment into the territory." The contract provided that either Tri-Tube or OEM could terminate the contract upon 90 days' notice. The contract further provided for post-termination commissions. Tri-Tube terminated the contract in October 1986.
Tri-Tube first argues that the trial court erred by applying the doctrine of "procuring cause" in its interpretation of the contract and thereby erred in awarding damages to OEM. Alabama courts have applied the doctrine to determine whether a real estate agent is entitled to a commission. See First Real EstateCorp. of Alabama v. Spiller, 603 So.2d 954 (Ala. 1992). Tri-Tube argues that the doctrine of "procuring cause" is applicable *Page 1305 
only where the contract at issue does not expressly provide for post-termination commissions. See Willis v. Champlain CableCorp., 109 Wn.2d 747, 748 P.2d 621 (1988). In this case, the contract does expressly provide for post-termination commissions, and the contract provides the method of calculating those commissions; however, there is no evidence that the trial court applied the doctrine in reaching its judgment. Rather, as discussed below, the trial court interpreted the post-termination compensation provisions of the contract in awarding damages to OEM.
Tri-Tube further argues that the trial court erred in construing the compensation provisions of the contract and therefore erred in awarding OEM damages. These provisions are as follows:
"4. Representative's Compensation
 "(a) The Company agrees to pay the Representative, as a commission, the percentage (as set forth on the attached Exhibit 'D') of the net invoice price of all products and services of the Company sold by Representative and covered by this Agreement from the date hereof until the 'effective date of termination' of this Agreement as that term is hereinafter defined. Such commission shall be deemed to have been earned upon the issuance by the customer to the Company for a purchase order, but such commission shall not [be] payable until the Company invoices the customer. Such commission shall be the only compensation, remuneration or payment due the Representative from the Company for all services rendered or to be rendered hereunder. Representative shall not be entitled to any reimbursement for costs or expenses incurred by him carrying out his duties under this Agreement.
 "(b) 'Net invoice price' means the total price at which an order is invoiced to the customer but excluding tooling, freight, and shipping costs, taxes, insurance, discounts and allowances, rework and repair charges, field service charges, and labor consulting services, if any.
 "(c) All orders obtained by Representative are subject to acceptance or rejection by an authorized officer of the Company at its home office and to approval by the Company's Credit Department, and Company shall be under no obligation to accept any such order for any reason it deems sufficient. Company shall be under no obligation to do anything with regard to potential business or orders obtained by the Representative, including, but not limited to, producing and submitting sample product, submitting financial data, or other information, making financial guarantees or otherwise doing anything to qualify to do business with or to satisfy any potential customer or governmental agency.
 "(d) In cases where products or services are sold outside the territory but for shipment into the territory, or are sold in the territory but for shipment outside the territory, one half of the commission shall be paid to each sales representative unless otherwise agreed to in writing.
 "(e) Notwithstanding the termination of this Agreement, [Tri-Tube] shall continue to pay to [OEM], for the life of the product or service, the commission on any product or service ordered by a customer after such termination but for which product or service [OEM] had earned a commission during the term of this Agreement. Within thirty (30) days after such termination, [Tri-Tube] will furnish to [OEM] a complete list of all such products or services to which such commissions after termination apply."
In interpreting these provisions, the trial court stated in its final judgment:
 "The issue in this case centers around the interpretation of paragraph 4(e) of the contract between the parties, specifically the meaning of the term 'life of the product'. . . . This court interprets the term 'life of the product' as set out in paragraph 4(e) of the contract as meaning the duration of time (before or after the termination of the contract of the parties) in which a product is manufactured and sold to a customer procured by [OEM] during the term of the contract and as a result of the efforts of [OEM] in the procurement of the sale of the product in the performance of the contract. To interpret such term in any other way would or could serve to defeat and render meaningless the contract *Page 1306 
entered into between the parties. For example, if no commissions were owed for products sold after the termination of a contract for products generated during the contract, then it would be very easy for an unscrupulous manufacturer to terminate a contract after a very profitable deal has been made for the sale of its product to a user and keep the commissions otherwise owed to the agent. Not only would the manufacturer avoid the payment of the commission, the manufacturer would also profit from the commission as the agreed to and quoted price would remain the same to the buyer, which price would include the amount of commission to be paid by the manufacturer to the sales agent."
(Emphasis added.)
In interpreting a contract, "[t]he court will give a natural meaning to the words in a contract so that all provisions of the contract are given a reasonable interpretation."Shadrick v. Johnston, 581 So.2d 805, 810 (Ala. 1991). Tri-Tube argues that the trial court's interpretation of paragraph (e) is not reasonable because paragraph (a) states that the agreed commission "shall be the only compensation, remuneration, or payment due [OEM] from [Tri-Tube] for all services rendered or to be rendered hereunder." Tri-Tube contends that paragraph (a) and paragraph (e) are contradictory, and, thus, create an ambiguity. We conclude that the provisions are not contradictory and do not create an ambiguity; rather, we conclude that paragraph (a) provides for the compensation during the term of the contract and paragraph (e) provides for compensation after the contract is terminated.
Tri-Tube further argues that the trial court's interpretation of the phrase "life of the product" is not reasonable. Our review of the several volumes of testimony, the invoices, and the wording of the contract supports the trial court's interpretation of paragraph (e); namely, that post-termination commissions prevent the principal (Tri-Tube) from benefiting from the efforts of the agent (OEM) without compensating the agent.
Tri-Tube next argues that the trial court erred in regard to the amount of damages it awarded to OEM. The amount of damages awarded for a breach of contract is within the discretion of the fact-finder and is presumed to be correct. IMAC Energy,Inc. v. Tittle, 590 So.2d 163 (Ala. 1991). The record includes several volumes of invoices OEM obtained from two companies, Tappan and Thermal Components, which OEM had recruited as customers for Tri-Tube. The invoices represent specific parts ordered by the companies after the contract was terminated, and which the companies, before the contract was terminated, had ordered as a result of OEM's recruitment. After reviewing the invoices and the computations upon which the trial court based its judgment, we conclude that the trial court did not abuse its discretion in awarding OEM $112,622.35 in post-termination commissions pursuant to the contract.
Tri-Tube also argues that the trial court erred in awarding $34,765.41 in pre-judgment interest to OEM. OEM presented evidence whereby it had calculated the pre-judgment interest on the invoices annually at six percent. OEM did not calculate the interest rate on each invoice, but rather on the yearly totals of the invoices, and thereby OEM underestimated the amount of interest. Therefore, the trial court did not err in determining that OEM was entitled to $34,765.41 in prejudgment interest.
Tri-Tube's final argument is that the trial court erred in excluding evidence regarding a similar contract OEM had had with another company. Our supreme court has ruled that evidence regarding terms of other contracts is not relevant because, "[o]nly the terms of the contract between [Tri-Tube] and [OEM], and payment thereunder, can affect the outcome of this case."Clancy Lumber Co. v. Howell, 260 Ala. 243, 247, 70 So.2d 239,242-43 (1954). Therefore, we conclude that the trial court did not err in excluding this evidence.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, YATES, and MONROE, JJ., concur. *Page 1307