322 So.2d 709

**The LLOYD NOLAND FOUNDATION, INC. d/b/a Lloyd Noland Hospital**

**v.**

**Jewel H. HARRIS.**

**SC 1214.**

Supreme Court of Alabama.

Nov. 13, 1975.

64

William C. Knight, Jr., Birmingham, for appellant.

Paden, Green & Paden, Bessemer, for appellee.

FAULKNER, Justice.

Lloyd Noland Foundation appeals from motions denying a new trial and judgment n. o. v., a jury verdict, and judgment against it for damages of $25,000, awarded to Jewel H. Harris, in a malpractice suit, in the Jefferson County Circuit Court, Bessemer Division.

The principal issues are: (1) Did Mrs. Harris prove her case without expert medical evidence of community standards of skill, care, and diligence. (2) Was it error to permit testimony referring to Lloyd Noland's insurance coverage. (3) Did the trial court err in charging the jury, and (4) were the damages excessive.

Mrs. Harris, a 53-year-old woman, filed a damage suit against Lloyd Noland, for negligently applying a hot plaster cast on her leg. Her claim is based on the following facts.

Mrs. Harris fell while sweeping the back door steps of her home. She was taken to Lloyd Noland's emergency room for X-ray, where a fracture of her left knee was diagnosed. Following X-ray, a splint cast was applied to her leg by a Lloyd Noland technician to immobilize it until treatment of the fracture. While he was applying the cast, Mrs. Harris told him that her leg was burning near the calf. He poured cold water into the cast and the burning eased. Subsequently, the cast was removed, the fracture was treated, and the leg was placed in traction.

On one of her rounds, a nurse observed a wound on Mrs. Harris' leg. The wound, apparently resulting from the plaster burn, became the concern of the nurses, and Mrs. Harris' husband, who discussed it with a staff doctor.

The wound was treated while Mrs. Harris remained at Lloyd Noland, and after her discharge, she received out-patient treatment for it.

Prior to her discharge, a cylinder cast was applied to Mrs. Harris' injured leg by a staff doctor. On one occasion, after returning home, Mrs. Harris noticed a strong odor about the place of the wound. And, when she went back for treatment as an out-patient, she told a staff doctor about the odor. The cast was ventilated and a black, bloody gauze was removed. The wound was cleaned and dressed. At this time, the doctor told Mrs. Harris that she might have to have a skin graft. She objected, and no grafting was done. She has a scar on her leg about 8 X 12 centimeters in size.

I.

Lloyd Noland contends that because of Mrs. Harris' failure to introduce expert medical testimony that it, or its employees, failed to exercise that degree of skill, care, and diligence as other hospitals within the same community would have exercised in like cases, she did not prove a prima facie case.

The testimony of two doctors was introduced by Mrs. Harris. One doctor testified ". . . I don't know what caused this lady's burn. I had never seen this happen before . . ." Another testified, "Well, I would say that the tissue perhaps had some ability [sic—should read disability] or was the result of an injury or as the result of a direct blow, as a result of perhaps some increase in the tissue sensitivity of the local area. There are so many reasons to mention without saying this is it, many ways you can get an area like that." On cross-examination, this doctor said, ". . . I cannot be sure one way or the other. I assume that there are several possibilities. She could have had increased local heat, a scrape or a direct blow, no way of telling for sure."

Mr. Kimbrough, who has been putting on splints for over 18 years testified as an expert for Lloyd Noland and said, "I have never seen it [referring to the cause of the wound on Mrs. Harris' leg] happen before and I couldn't understand how it could have happened." He testified further that he put the splint on Mrs. Harris' leg the same way that he had put splints on thousands of other persons.

▇ In this case, we are of the opinion that no medical evidence of failure to exercise that degree of skill, care and diligence as other hospitals within the same community would have exercised in like cases, is not fatal to Mrs. Harris' case. Ordinarily, in a malpractice case, proof of what is or is not proper practice, treatment, and procedure can be established only by medical evidence. But, in a case where want of skill or lack of care is so apparent so as to be understood by a layman, and requires only common knowledge and experience to understand it, expert evidence is not required. *Parrish v. Spink*, 284 Ala. 263, 224 So.2d 621 (1969).

▇ Here, no person at the hospital can explain what happened, yet something did happen. It does not require an expert to prove a hot object will burn human skin. Mrs. Harris testified she was burned, and medical personnel at Lloyd Noland testified Mrs. Harris' leg was burned. The application of the cast causing the burn was within the exclusive control of Lloyd Noland, and Mrs. Harris did not contribute to her injury; consequently, there was no need for medical evidence. The case was properly submitted to the jury for its decision. *Norwood Hospital v. Brown,* 219 Ala. 445, 122 So. 411 (1929).

II.

Lloyd Noland says the trial court erred by permitting reference to insurance during the direct examination of Mr. Harris as a witness for Mrs. Harris. The error allegedly arises from these questions and answers:

"Q. What did you tell him, if anything?

"A. I told him we needed compensation on it.

"Q. On the burns to your wife's leg?

"A. Yes, sir.

"Q. What did he reply?

"A. He said he'd notify the insurance.

"Q. Did you hear from anyone else during that period?

"A. No, sir.

"Q. After you talked with Mr. McClain at the hospital, did you talk with anyone else at the hospital?

"A. No, I didn't.

"Q. Did you ever talk with Dr. Hamrick?

"A. Over the phone.

"Q. Did you call him or did he call you?

"A. I believe my wife called him first and he called back and I talked to him.

"Q. What did Dr. Hamrick tell you, if anything?

"A. He said if I would turn it over to the insurance, they would pay for it.

"MR. KNIGHT: I'm going to object to that as an unresponsive answer, and move to exclude it. I'll ask the Court to instruct the jury about coverage comments.

"THE COURT: I'll sustain the objection. You must not consider that answer to that question."

When insurance is injected into a case by irresponsive testimony to a proper question, the prejudicial effect of such evidence may be eradicated by proper instructions from the court. *Cannon v. Scarborough*, 223 Ala. 674, 137 So. 900 (1931); *Clark v. Hudson*, 265 Ala. 630, 93 So.2d 138 (1957).

Here, the court sustained the objection, and told the jurors they could not consider the answer to the question. We are of the opinion the prejudice, if any, was eradicated by the court's admonition not to consider the answer. We note in passing, counsel for Lloyd Noland injected insurance into the case on cross-examination of this witness. It would appear, as counsel for Mrs. Harris says in brief, "What's good for the goose is good for the gander."

### III.

Lloyd Noland excepted to that portion of the court's oral charge defining standard of care owed by hospitals to their patients. The court said this:

"If the defendant in this case followed the processes that are generally followed and persisted in other well regulated and skilled hospitals in the general area, then he would not be guilty of negligence. A good example would be, if a plumber came to your house to fix a leak or any defect, if he did it in the same careful manner that any other skilled plumber would have done and something happened and your water heater blew up, unless he did something that another skillful plumber would not have done, or would have done under the same or similar circumstances, he would hardly be responsible for the result of your water heater blowing up.

"So, if you're reasonably satisfied from the evidence on this occasion that O'Neal Kimbrough applied this appliance with the same degree of care as other casts men who are reasonably skilled in another well regulated hospital would have done, then he could not be said to have been guilty of any negligence on this occasion."

Generally stated, the degree of care, skill, and diligence, owed by a hospital to its patients, is measured by the care, skill, and diligence used generally by hospitals in the same community. *Doctors Hospital of Mobile, Inc. v. Kirksey*, 290 Ala. 220, 275 So.2d 651 (1973). We are of the opinion that the words used by the court in his instruction, informed the jury of the standard care a hospital owes to its patients. The judge's charge was earthy, but the message to the jury is clear. There is no fixed formula for instructions. The instructions should state the law as applied to the evidence of the case. Cf. *Thierry v. Oswell*, 212 Ala. 418, 102 So. 903 (1925).

### IV.

We are of the opinion that the jury verdict should not be disturbed by this court. The trial court refused to set aside the verdict, and refused to grant a new trial. He heard the evidence and saw the witnesses. We are unable to find the verdict was the result of passion, prejudice, partiality, or corruption. *Louisville & Nashville Railroad Co. v. Gothard*, 273 Ala. 424, 142 So.2d 712 (1962); *Central of*

*Georgia Railway Co. v. Phillips,* 286 Ala. 365, 240 So.2d 118 (1970).

Affirmed.

HEFLIN, C. J., and BLOODWORTH, ALMON and EMBRY, JJ., concur.