THOMPSON, Presiding Judge.
 

 This is a medical-malpractice case. Deborah Ford, the plaintiff, appeals from summary judgments entered by the Calhoun Circuit Court in favor of Stringfellow Memorial Hospital (“the hospital”), Dr. Willie Stokes, and Millennium Health Clinic, P.C. (“Millennium”). For the reasons stated herein, we reverse those judgments.
 

 Considered in the light appropriate to our review of the trial court’s summary judgments, the record reveals the following pertinent facts. On September 30, 2005, Ford was admitted to the hospital for a surgery to remove a cyst from her right wrist. The surgery was to be performed by Dr. Stokes, an orthopedic surgeon and the chief of surgery at the hospital.
 

 On the morning of Ford’s surgery, Donna Jones, a registered nurse employed by the hospital, was charged with gathering all the equipment and instruments that would be used in Ford’s surgery. One of the pieces of equipment that was to be used in the surgery was a metal device known as a “wrist traction tower.” The purpose of the wrist traction tower was to elevate and to hold in place the patient’s hand and wrist as surgery was performed on the patient’s wrist. The wrist traction tower was made up of six to eight separate parts, including, among others, a base plate on which the patient’s arm rested during surgery.
 

 While she was gathering the surgical equipment for Ford’s surgery, Jones discovered that the wrist traction tower, which was disassembled at that time, had not been sterilized the day before the surgery, as was the routine practice. Thus, she was required to sterilize the wrist traction tower that morning, about an hour before Ford’s surgery. This task was accomplished through the use of a “flash” sterilization technique in which the parts of the wrist traction tower were placed on a pan, put in a device known as a “flasher” for four minutes, and heated to a temperature of 270 degrees Fahrenheit. Once the
 
 *187
 
 sterilization process was completed, Jones removed the pan containing the parts of the wrist traction tower from the flasher with oven mitts and took the pan to the operating room. Once in the operating room, Jones removed the lid from the pan and allowed the wrist traction tower to air cool for the hour leading up to Ford’s surgery.
 

 Pam Clayton, a registered nurse employed by the hospital, assisted Dr. Stokes during Ford’s surgery. Before the procedure began, Ford was placed under general anesthesia, which rendered her unconscious, her right arm was placed in a stockinette, and she was covered with draping. Dr. Stokes and Clayton assembled the wrist traction tower and Ford’s arm was placed in it. Dr. Stokes then performed the surgery on Ford’s wrist. At the conclusion of the surgery, as Ford’s arm was being removed from the wrist traction tower, it was discovered that Ford’s upper arm, in an area near her tricep that had been resting on the wrist traction tower, had been burned. A place on her upper back that had also been in contact with the wrist traction tower had been burned as well.
 

 It was determined that Ford’s upper arm had sustained a third-degree burn, although the burn on Ford’s back was not as severe. The area of the burn on Ford’s upper arm measured 12.5 centimeters by 4.5 centimeters. The damage to Ford’s upper arm was so severe that she required further medical treatment. Eventually, a plastic surgeon had to perform a skin graft on Ford’s upper arm; this procedure required that a patch of skin be removed from Ford’s leg and grafted onto the area of the burn on her upper arm.
 

 On January 25, 2007, Ford filed an action against the hospital; Dr. Stokes; Millennium, of which Dr. Stokes was the sole owner and employee; and Darryl Hoard, a representative of the manufacturer of the wrist traction tower who was present during Ford’s wrist surgery. She alleged that the defendants had acted with negligence with regard to the use of the wrist traction tower and that, as a result of their negligence, she had been injured.
 
 [1]
 

 On September 30, 2008, Dr. Stokes and Millennium filed a motion for a summary judgment. In their motion, they argued that all the care and treatment that Dr. Stokes rendered to Ford met the applicable standard of care and that nothing he did or failed to do caused the burn to Ford’s arm. They argued that Dr. Stokes was not responsible for ensuring that the wrist traction tower was properly sterilized or cooled before surgery and that, when he assembled the wrist traction tower, it was cool to the touch. They argued that the burden was on Ford to establish, by expert medical testimony, the appropriate standard of care, a breach of that standard, and that the breach proximately caused the injury of which she complained. They argued that, by indicating that she did not intend to call an expert witness at trial, Ford would be unable to present substantial evidence of those elements of her claim and that, as a result, Dr. Stokes was entitled to a summary judgment. They argued that because the claims against Millennium were grounded in vicarious liability, the fact that Dr. Stokes was entitled to a summary judgment meant that Millennium was entitled to a summary judgment as well. In support of their summary-judgment motion, Dr. Stokes and Millennium attached an afflda-
 
 *188
 
 vit from Dr. Stokes in which he stated, among other things, that he did not sense any heat in the parts of the wrist traction tower that he had handled when assembling it before surgery, that it was not his duty to ensure that the tower had cooled before its use in surgery, and that the care he had rendered to Ford was within the applicable standard of medical care applicable to board-certified orthopedic surgeons.
 

 On November 6, 2008, Ford filed a response to Dr. Stokes and Millennium’s summary-judgment motion. She argued that she was not required to present expert testimony of the standard of care applicable to Dr. Stokes’s treatment of her, his breach of that standard, and proximate causation of the burn to her arm because Dr. Stokes’s own testimony provided substantial evidence of those matters. Specifically, she argued that Dr. Stokes had testified in his deposition that the applicable standard of care required that he position pads or towels between her and the wrist traction tower, as called for in the manufacturer’s instructions for the wrist traction tower, to prevent her from being burned by residual heat in the wrist traction tower, but that he had failed to do so. She also argued that expert testimony was not necessary to prove her claims against Dr. Stokes and Millennium because the injury to her arm was remote from the location of the surgery and because Dr. Stokes’s lack of due care was so apparent as to be within the knowledge of a layperson.
 

 On November 11, 2008, Ford filed a motion for a summary judgment against the hospital. She argued that the undisputed evidence of record, including the depositions of Brandon Rogers, the hospital’s director of surgical services, and Donna Jones, the nurse at the hospital who had been responsible for sterilizing the wrist traction tower, demonstrated that hospital employees were obligated to cool the wrist traction tower sufficiently before its use in Ford’s surgery, that they had failed to do so, and that Ford had been burned as a result. Thus, she argued, the hospital was liable to her for the burns to her upper arm and to her upper back, and, she asserted, the only issue left for resolution by the jury as to her claim against the hospital was the amount of compensation to which she was entitled.
 

 On November 18, 2008, the hospital filed a response to Ford’s summary-judgment motion. It argued that the fact that the wrist traction tower was still warm enough to burn Ford after having air cooled for an hour was an unforeseen complication and that the fact that Ford had suffered burns was not sufficient to demonstrate that hospital employees were negligent in rendering services to her. The hospital argued that it was not an insurer or a guarantor of the successful treatment of Ford and that the fact that the care and treatment it rendered to Ford did not produce a good result did not, in and of itself, establish that its employees had acted negligently.
 

 On November 25, 2008, the hospital filed a motion for a summary judgment. In addition to the arguments it had set forth in opposition to Ford’s summary-judgment motion, it argued that Ford had failed to proffer substantial evidence indicating that any of its employees had breached the appropriate standard of care in providing medical care to Ford or that any hospital employee had caused or contributed to the burns that Ford had suffered during the surgery on her wrist. Thus, the hospital argued, it was entitled to a summary judgment on Ford’s claim against it. The hospital attached the affidavit of Brandon Rogers to its motion. In that affidavit, Rogers stated, among other things, that hospital employees met the appropriate
 
 *189
 
 standard of care when they allowed the wrist traction tower to air cool for an hour before the surgery on Ford’s wrist, although he also stated that there was no specific time required to cool various surgical instruments and equipment. He stated that cooling is routinely assessed by touch and that the wrist traction tower had been cool to the touch at the time that Dr. Stokes and Clayton had assembled it.
 

 On December 1, 2008, Ford filed a motion to strike Rogers’s affidavit. She argued that Rule 56(e), Ala. R. Civ. P., requires that affidavits be based on personal knowledge. She pointed out that Rogers had testified in his deposition that he had not been in the operating room when Dr. Stokes and Clayton had assembled the wrist traction tower and that, as a result, he could not have personal knowledge as to whether the wrist traction tower was cool to the touch at the time that it was assembled, as he had asserted in his affidavit. Ford also argued that the portion of Rogers’s affidavit in which he had stated that the hospital’s employees had met the applicable standard of care when allowing the wrist traction tower to air cool for one hour before her surgery contradicted his deposition testimony in which he had testified that the failure to cool surgical equipment so that a patient is not burned by the equipment violates the applicable standard of care.
 

 On December 4, 2008, the day the trial court had set for a hearing on the pending summary-judgment motions, the hospital filed the affidavit of Donna Jones, who, as previously noted, had sterilized the wrist traction tower on the morning of Ford’s surgery. In her affidavit, Jones stated that Dr. Stokes and Clayton had assembled the wrist traction tower in her presence. She stated that “there was no indication whatsoever that the device was not cool to the touch.” She also stated, as had Rogers in his affidavit, that hospital employees met the appropriate standard of care when they allowed the wrist traction tower to air cool for an hour before the surgery on Ford’s wrist.
 

 On December 5, 2008, Ford filed a motion to strike Jones’s affidavit. She pointed out that, in Jones’s deposition, Jones had testified that she had not touched the wrist traction towér after it had been sterilized and that, as a result, Jones did not have personal knowledge as to whether the wrist traction tower had cooled sufficiently for use in Ford’s surgery. Ford also argued that Jones’s affidavit statement that hospital employees had not violated the applicable standard of care when cooling the wrist traction tower was contradicted by Jones’s deposition testimony that the standard of care required that all parts of the wrist traction tower be cooled before its use in surgery.
 

 On December 7, 2008, the trial court denied Ford’s motion for a summary judgment, granted the hospital’s motion for a summary judgment, and granted Dr. Stokes and Millennium’s motion for a summary judgment. On the following day, Ford filed a motion to have the trial court make its summary judgments final pursuant to Rule 54(b), Ala. R. Civ. P., because one defendant, Darryl Hoard, still remained in the action. The trial court granted that motion. Ford filed a motion to alter, amend, or vacate the summary judgments, which was denied by operation of law.
 
 See
 
 Rule 59.1, Ala. R. Civ. P. Ford filed a timely appeal of the summary judgments to our supreme court. The supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
 

 The standard by which this court reviews a summary judgment is well settled.
 

 “This Court’s review of a summary judgment is de novo.
 
 Williams v. State
 
 
 *190
 

 Farm
 
 Mut:
 
 Auto. Ins. Co.,
 
 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.;
 
 Blue Cross & Blue Shield of Alabama v. Hodurski,
 
 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant.
 
 Wilson v. Brown,
 
 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact.
 
 Bass v. SouthTrust Bank of Baldwin County,
 
 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’
 
 West v. Founders Life Assur. Co. of Fla.,
 
 547 So.2d 870, 871 (Ala.1989).”
 

 Dow v. Alabama Democratic Party,
 
 897 So.2d 1035, 1038-39 (Ala.2004).
 

 We note that, as part of her appeal, Ford contends that the trial court erred when it denied her motion for a summary judgment against the hospital. Although we will review the merits of the summary judgments the trial court entered in favor of the hospital, Dr. Stokes, and Millennium, we cannot entertain Ford’s attempted appeal of the denial of her summary-judgment motion because “ ‘ “[a]n order denying summary judgment is interlocutory and nonappealable.” ’ ”
 
 Continental Cas. Co. v. SouthTrust Bank, N.A.,
 
 933 So.2d 337, 340 (Ala.2006) (quoting
 
 Fahey v. C.A.T.V. Subscriber Servs., Inc.,
 
 568 So.2d 1219, 1222 (Ala.1990), quoting in turn
 
 Parsons Steel, Inc. v. Beasley,
 
 522 So.2d 253, 258 (Ala.1988)). We turn, then, to the summary judgments entered by the trial court.
 

 In medical-malpractice cases, “the general rule in Alabama is that expert medical testimony is required to establish what is and what is not proper medical treatment and procedure.”
 
 Timmerman v. Fitts,
 
 514 So.2d 907, 911 (Ala.1987). This general rule is subject to exceptions, and, in
 
 Ex parte HealthSouth Corp., 851
 
 So.2d 33 (Ala.2002), our supreme court set forth a reformulation of those exceptions:
 

 “A narrow exception to th[e rule requiring plaintiffs to proffer expert testimony in medical-malpractice cases] exists ‘ “in a case where want of skill or lack of care is so apparent ... as to be understood by a layman, and requires only common knowledge and experience to understand it.” ’
 
 Tuscaloosa Orthopedic Appliance Co. v. Wyatt,
 
 460 So.2d 156, 161 (Ala.1984) (quoting
 
 Dimoff v. Maitre,
 
 432 So.2d 1225, 1226-27 (Ala.1983), quoting in turn
 
 Lloyd Noland Found., Inc. v. Harris,
 
 295 Ala. 63, 66, 322 So.2d 709, 711 (1975)). In
 
 Anderson,
 
 this Court illustrated this exception by listing the following examples: 1) where a foreign object, such as a sponge, remains in a patient’s body after surgery; 2) where the injury is unrelated to the condition for which the plaintiff sought treatment; 3) where a plaintiff relies on an authoritative medical treatise to prove what is or is not proper; and 4) where the plaintiff himself or herself is a medical expert.
 
 Anderson,
 
 778 So.2d at 811.
 

 “A review of those examples reveals that only the first and second examples relate to that category of cases where want of skill or lack of care is so appar
 
 *191
 
 ent as to be understood by a layperson, and ‘requires only common knowledge and experience to understand it.’
 
 Wyatt,
 
 460 So.2d at 161. Examples three and four have nothing to do with evidence within the common knowledge of the jury and therefore do not illustrate that category of cases. For this reason alone, reformulation of the statement of the exception to the general rule requiring expert testimony is warranted.
 

 [[Image here]]
 

 “Accordingly, we reformulate the exception to the rule ... to recognize first, a class of cases ‘ “where want of skill olack of care is so apparent
 
 ...
 
 as to be understood by a layman, and requires only common knowledge and experience to understand it,
 
 ”
 
 ’ Wyatt,
 
 460 So.2d at 161
 
 (quoting Dimoff v. Maitre,
 
 432 So.2d 1225, 1226-27 (Ala.1983)),
 
 such as when a sponge is left in, where, for example, the wrong leg is operated on, or ... where a call for assistance is completely ignored for an unreasonable period of time.
 
 A second exception to the rule requiring expert testimony applies when a plaintiff relies on ‘ “ ‘a recognized standard or authoritative medical text or treatise,’ ” ’
 
 Anderson,
 
 778 So.2d at 811, or is himself or herself a qualified medical expert.”
 

 851 So.2d at 38-39 (emphasis added). Even when expert testimony is required to establish certain elements of a plaintiffs medical-malpractice claim, the plaintiff need not produce an independent expert witness to provide that testimony; instead, the plaintiff may rely on the testimony of the defendant to establish the elements of the claim for which expert testimony is required.
 
 See Timmerman,
 
 514 So.2d at 913;
 
 Wilson v. Manning,
 
 880 So.2d 1101, 1110-11 (Ala.2003); and
 
 Dansby v. Hagood,
 
 719 So.2d 839, 842 (Ala.Civ.App.1998).
 

 In his deposition, Brandon Rogers, a registered nurse and the hospital’s director of surgical services, testified that it was important for patient safety that devices such as the wrist traction tower be properly cooled before being used in surgery. He testified that he was familiar with the standard of care in the national medical community for persons responsible for the sterilization of medical equipment and instruments that are to be used in surgery and that that standard of care required that the person cool the equipment after flash sterilization so that the patient would not be burned. He testified that a failure to cool the equipment that results in the patient’s being burned fails to meet that standard of care. He státed that the standard of care requires that all parts of the equipment be cooled' and that the failure to cool all parts of the equipment fails to meet that standard of care. He admitted that he did not see the scrub nurse who helped Dr. Stokes put the wrist traction tower together in the operating room check every part of the wrist traction tower to make sure it was not hot enough to burn Ford.
 

 Donna Jones testified in her deposition that, on the morning of Ford’s surgery, it was her responsibility to gather the equipment to be used in. that surgery. She testified that she had been responsible for sterilizing the wrist traction tower but that she did not touch it after it had been sterilized. She testified that she was familiar with the standard of care in the national medical community for persons responsible for medical equipment and instruments for use in surgery. She testified that the standard of care requires that all parts of such equipment be cooled after sterilization so that the patient is not burned during surgery and that the failure to cool all parts of the equipment to prevent the patient from being burned fails to
 
 *192
 
 meet the standard of care. Although she testified that Dr. - Stokes and Clayton checked the device to see if it had cooled sufficiently to be used in surgery, she admitted that they had touched the device only as part of setting it up for the surgery on Ford’s wrist and that they had not done anything special during that process to check it.
 

 The testimony of Rogers and Jones adequately established the standard of care applicable to hospital employees with regard to sterilizing and cooling medical equipment to be used in surgery and that the failure to allow the wrist traction tower to cool sufficiently after it was sterilized would constitute a breach of that standard of care. Considered in the light most favorable to Ford, as required by the standard by which this court reviews a summary judgment, the record demonstrates that, in spite of the fact that Dr. Stokes and Clayton touched various parts of the wrist traction tower when putting it together and apparently did not find any of the parts they touched to be too warm for use, a portion of the wrist traction tower sufficient to cause a third-degree burn measuring 12.5 centimeters by 4.5 centimeters on Ford’s upper arm, as well as another portion of the wrist traction tower that caused a separate burn on Ford’s back, remained too warm for appropriate use in the surgery. Thus, Rogers’s and Jones’s testimony, coupled with the undisputed evidence in the record, sufficiently established by substantial evidence the appropriate standard of care for hospital employees and what would constitute the breach of that standard of care by hospital employees and created a genuine issue of material fact as to whether the alleged breach proximately caused the third-degree burn to Ford’s upper arm.
 
 [2]
 

 The hospital argues that summary judgment was appropriate on Ford’s claim against it because Ford failed to provide any expert medical testimony proving the elements of her claim. We note that the hospital itself appears to have proffered Rogers and Jones as experts regarding the standard of care for hospital staff when sterilizing and cooling surgical equipment and instruments when, in support of its summary-judgment motion and in opposition to Ford’s summary-judgment motion, it submitted affidavits from both of them in which they testified as to the appropriate standard of care for hospital employees in this case and whether any hospital employees had breached that standard. As previously noted, a plaintiff in a medical-malpractice case need not present independent expert medical testimony when the defendant itself provides such testimony.
 
 See Timmerman,
 
 514 So.2d at 913.
 

 Moreover, even if Rogers and Jones are not considered experts regarding the matters relevant to this case, Ford was under no obligation to provide expert testimony in opposition to the hospital’s summary-judgment motion. Whether a hospital’s employees are under a duty to properly and sufficiently cool surgical
 
 *193
 
 equipment and instruments before their use in surgery, whether the wrist traction tower was not sufficiently cooled after it was sterilized, and whether the heat from the wrist traction tower caused a third-degree burn to Ford’s upper arm are all matters that can be easily understood and determined by the average person without the aid of a medical expert. Simply put, the present case fits within the “class of cases ‘ “where want of skill or lack of care is so apparent ... as to be understood by a layman, and requires only common knowledge and experience to understand
 
 it....”’” Ex parte HealthSouth Corp.,
 
 851 So.2d at 39.
 
 See also Lloyd, Noland Found., Inc. v. Harris,
 
 295 Ala. 63, 66, 322 So.2d 709, 711-12 (1975) (expert medical testimony not necessary in case involving burn to leg of patient caused by application of cast that had not been properly cooled).
 

 Based on the foregoing, we conclude that the record contains substantial evidence in support of Ford’s claim against the hospital. As a result, the trial court erred when it entered a summary judgment in the hospital’s favor, and that summary judgment is due to be reversed.
 

 Our review of the record in the light most favorable to Ford likewise leads us to conclude that the trial court’s summary judgment in favor of Dr. Stokes and Millennium is also due to be reversed. During Dr. Stokes’s deposition, counsel for Ford referenced particular lines of what counsel said was an information sheet regarding the wrist traction tower that was prepared by the manufacturer of the wrist traction tower. Ford’s counsel asked if the instruction that the surgical staff, of which Dr. Stokes admitted he was a member, ensure that all the components of the wrist traction tower were cool to the touch before assembly constituted the proper standard of care for the surgery staff. Dr. Stokes testified that it was. Although Dr. Stokes testified that all the parts of the wrist traction tower that he handled were cool to the touch, he admitted that he did not touch every part of the wrist traction tower, and, specifically with regard to the base plate of the wrist traction tower, he testified that he assumed that' he had handled it but that he did not have a specific recollection of having done so. Ford’s counsel also pointed out an instruction in the sheet indicating that pads or towels should be placed between the patient and contact surfaces of the wrist traction tower “to protect against nerve damage and residual heat,” and he asked Dr. Stokes if he was required to follow that instruction as a board-certified orthopedic surgeon “in the national medical community.” Dr. Stokes responded that he was. Dr. Stokes then admitted that he did not have a pad or a towel placed between Ford’s arm and the wrist traction tower, although he testified, among other things, that there were “different ways of protecting the patient’s skin” and that he had placed a stockinette over Ford’s arm and had covered her with draping.
 

 Dr. Stokes testified that it was not below the applicable standard of care for him to have used a wrist traction tower that had not cooled sufficiently and, as a result, had caused a burn to the patient. Dr. Stokes also testified that it was not below the applicable standard of care to have failed to place a towel or a pad between Ford’s arm and the surface of the wrist traction tower. Given his testimony recounted in the previous paragraph, however, a fact-finder would be free to conclude otherwise. Simply put, while Dr. Stokes’s testimony is vague and somewhat contradictory in places, a fact-finder who reviewed his testimony in the light most favorable to Ford could conclude that Dr. Stokes violated the applicable standard of care in his treatment of Ford and that his violation of that
 
 *194
 
 standard caused the third-degree burn to Ford’s upper arm that is the basis of the present action.
 

 Because Dr. Stokes’s testimony provides an adequate foundation for a conclusion that substantial evidence supports Ford’s claims against Dr. Stokes and Millennium, Ford was under no obligation, as contended by Dr. Stokes and Millennium, to present any further expert medical testimony in support of her claims against them.
 
 See Timmerman,
 
 514 So.2d at 913. Thus, the summary judgment in favor of Dr. Stokes is due to be reversed. Furthermore, because the basis for the summary judgment as it pertained to Millennium was that Dr. Stokes, its sole employee, was entitled to a summary judgment, the reversal of the summary judgment as to Dr. Stokes necessarily requires reversal of the summary judgment in favor of Millennium.
 

 Based on the foregoing, we reverse the summary judgments in favor of the hospital, Dr. Stokes, and Millennium, and we remand the cause to the trial court for additional proceedings. In reaching this conclusion, we should not be understood to have expressed a view as to the appropriate outcome of any trial on the merits of Ford’s claims against the defendants; we merely conclude that the record contains sufficient evidence to warrant a determination of the merits of her claims by a fact-finder.
 

 REVERSED AND REMANDED.
 

 PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . She also named an entity referred to as Alabama Orthopedics as a defendant, but she later dismissed it from the action.
 

 [2]
 

 . As previously noted, Rogers and Jones both stated in affidavits that hospital employees did not violate the applicable standard of care. Their deposition testimony provides substantial evidence, however, that hospital employees did, in fact, violate the applicable standard of care by using a piece of surgical equipment before it had cooled sufficiently. At most, their affidavit testimony sets up a conflict requiring resolution by a fact-finder.
 

 We note Ford's contention that the trial court erred when it implicitly denied her motion to strike Rogers’s and Jones’s affidavits. Because we conclude that the summary judgment in favor of the hospital was inappropriate even in light of those affidavits, the question whether the trial court erred when it failed to strike them is moot.