PER CURIAM.
Felice McGathey appeals from summary judgments entered by the Jefferson Circuit Court in favor of Brookwood Health Services, Inc., d/b/a Brookwood Medical Center (“Brookwood”), and Scott Appell, M.D. (“Dr. Appell”), in her medical-malpractice action; she also challenges the trial court’s order denying her motion for leave to amend her complaint to substitute real parties for fictitiously named defendants. We affirm in part, reverse in part, and remand.

I. Facts and Procedural History

On September 12, 2008, McGathey was admitted to Brookwood Medical Center for outpatient surgery to be performed by Dr. Appell. Dr. Appell performed a left-shoulder arthroscopy, a subacromial decompression, and a distal clavicle resection. McGathey was placed under general anaesthesia before the surgery. A Spider Limb Positioner manufactured by Smith & Nephew, Inc., was used to hold McCa-uley's left arm in place during the surgery. A metal bar was strapped onto McGathey’s arm, and that bar was strapped to a coupler that immobilized her shoulder.
Before the surgery, the circulating registered nurse (“RN”), Kelly Forrest, noticed that the metal bar had not been sterilized. He placed the metal bar in a sterile basket and then placed the basket in an autoclave, which is a device that heats objects to the sterilization temperature of 270 degrees Fahrenheit.
Operating-room technician (“ORT”) Paul Nunnally, a Brookwood employee, entered the operating room at 11:21 a.m. on the day of the surgery and began to place the equipment needed for the procedure on a sterile table. Sometime thereafter Forrest entered the operating room with the metal bar still in the sterile basket and placed the basket next to Nunnally. In his deposition, Nunnally testified that he transferred the metal bar from the sterile basket to the sterile table with a glove or a *98 towel[1] because he knew that the metal bar was still hot from having been recently sterilized. He testified that, upon moving the metal bar, he could tell that it was “very hot” — so hot that it would have burned him had he. not insulated his hand to place it on the table.
Nunnally also testified that, if necessary, a member of the operating-room team can cool a piece of sterilized equipment down before it is used. He stated that he sometimes has a pan in the operating room, into which he can pour saline and then place hot equipment into the saline to cool it down before it is used in surgery. Nun-nally testified that he did not have such a pan in the operating room before McGa-they’s surgery because he forgot to bring one and because he was busy before the surgery and forgot to ask someone to retrieve one. Nunnally stated that generally the “sterile team”[2] decided whether a piece of equipment needed to be cooled down before it was used in a procedure. In this instance, the sterile team consisted of Dr. Appell, Physician’s Assistant (“PA”) Jennifer Rawlings, and ORT Nunnally. Nunnally also stated, however, that he was permitted to make a decision on his own as to whether a piece of equipment should be cooled down before being used. He testified that he had a responsibility to look out for a patient’s safety during a procedure and that if he observed something potentially harmful to the patient — even if it was not specifically part of his duties — it was his responsibility to bring the danger to the attention of the other members of the surgical team.
At 12:00 p.m., PA Rawlings, who was an employee of Alabama Spine and Joint (Dr. Appell’s physician-practice group),[3] entered the operating room. Soon thereafter, Nunnally informed Rawlings that he had the metal bar and that “it was hot.” Nunnally testified that he told Rawlings that the metal bar was hot “to caution her that it needed to cool before we used it.” Nunnally did not remember Rawlings making any response to his statement.[4] Soon thereafter, Rawlings placed the metal bar in a foam sleeve. She then attached the metal bar to McGaidie/s left arm and hand. Next, Rawlings attached the metal bar to a coupler attached to the Spider Limb Positioner.
At 12:07 p.m., Dr. Appell entered the operating room and began the procedure. The Spider Limb Positioner held McGa-they’s arm throughout the surgery. Present in the operating room during the procedure were Dr. Appell, PA Rawlings, RN Forrest, ORT Nunnally, Certified Registered Nurse Anesthetist Wendy Dial, and Michael Carra, a sales representative with Smith & Nephew, Inc.[5] After the surgery, McGathey was transported to the recovery room. When McGathey awoke from being under anesthesia, she complained of pain in the little finger of her left hand. The recovery-room nurse noted a blister on McGathey’s finger. Upon being advised of *99 the blister, Dr. Appell ordered a Xeroform dressing to be applied to the little finger and the ring finger of McGathey’s left hand.
On October 31, 2008, at the request of McGathey’s counsel, Brookwood released to McGathey copies of the medical records for her surgery. The medical records provided the names of the individuals involved in the surgery but did not detail the specific activities of the surgical team during the procedure.
On September 9, 2010, McGathey filed a complaint in the Jefferson Circuit Court against Brookwood, Dr. Appell, and fictitiously named defendants in which she asserted several medical-negligence claims, including claims arising under the Alabama Medical Liability Act, § 6-5-480 et. seq. and § 6-5-540 et seq., Ala.Code 1975 (“the AMLA”). McGathey alleged that she had suffered a severe burn on the little finger of her left hand as a result of the defendants’ actions and that the burn had caused permanent disfigurement and impaired mobility in her hand.
On March 22, 2011, McGathey served interrogatories on Brookwood, requesting, among other things, the names and duties of everyone who was present during the surgery and what each person did to prepare McGathey for the surgery. Brook-wood’s answer listed the names and titles of the surgery participants, but it did not detail the activities or duties of each person with regard to the surgery.[6]
On October 27, 2011, McGathey deposed Forrest and Nunnally. On December 15, 2011, McGathey deposed Rawlings. On December 21, 2011, McGathey filed a motion for leave to amend her complaint to substitute Nunnally and Rawlings for two of the fictitiously named defendants.
On January 9, 2012, Brookwood moved for a summary judgment. McGathey responded to Brookwood’s motion on January 12, 2012. On the same date, Dr. Ap-pell moved for a summary judgment. McGathey responded to Dr. Appell’s motion on January 25, 2012.
On January 26, 2012, the trial court heard arguments concerning the motions for a summary judgment and McGathey’s motion for leave to amend her complaint. On February 3, 2012, the trial court denied McGathey’s motion for leave to amend her complaint. Finding that McGathey had failed to present expert testimony as required by the AMLA, the trial court granted the motions for a summary judgment filed by Brookwood and Dr. Appell. McGathey appeals.

II. Standard of Review

Our standard of review of a summary judgment is well settled:
“ ‘The standard of review applicable to a summary judgment is the same as the standard for granting the motion.... ’ McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958 (Ala.1992).
“ ‘A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evi *100 dence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present “substantial evidence” creating a genuine issue of material fact — “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Ala.Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).’
“Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala.1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala.2004).”
Pritchett v. ICN Med. Alliance, Inc., 938 So.2d 933, 935 (Ala.2006).
“This Court reviews de novo the trial court’s application of Rule 15(c)(2)[, Ala. R. Civ. P.]. Whitfield v. Murphy, 475 So.2d 480, 483 (Ala.1985) (stating that ‘[t]he relation-back doctrine of Rule 15(c) ... is an objective standard and its application under the prescribed circumstances is nondiscretionary’); Cummins Engine Co. v. Invictus Motor Freight, Inc., 641 So.2d 761, 764 (Ala.1994); and Gulf States Steel, Inc. v. William Clarence White, 742 So.2d 1264, 1267 (Ala. Civ.App.1999).”
Prior v. Cancer Surgery of Mobile, P.C., 959 So.2d 1092,1094-95 (Ala.2006).

III. Analysis

McGathey raises three issues on appeal. First, she contends that the trial court erred by granting Brookwood’s and Dr. Appell’s motions for summary judgment. She argues that she was not required to present expert testimony to demonstrate that those defendants had breached the standard of care. Second, she argues that the trial court erred in dismissing her claims of assault and battery, which, she insists, can be maintained in a medical-malpractice action. Third, McGathey contends that the trial court erred by refusing to allow her to amend her complaint to substitute Nunnally and Rawlings for the fictitiously named defendants in her original complaint that her naming of them as defendants related back to the filing of her original complaint, thus avoiding the bar of the two-year statute of limitations in § 6-5-482, Ala.Code 1975. We address each argument in turn.

A. Necessity of Expert Testimony

In its summary-judgment motion, Brookwood submitted excerpts from the depositions of ORT Nunnally and RN Forrest in which they testified that they had met the requisite standard of care both before and during McGathey’s surgery. In his summary-judgment motion, Dr. Ap-pell submitted excerpts of the deposition testimony of PA Rawlings and ORT Nun-nally, as well as his own affidavit, in which he stated that he “met the standard of care, skill, and diligence required of me in my treatment of Ms. McGathey.” McGa-they does not dispute that Brookwood and Dr. Appell met their prima facie burden on summary judgment.
“If the movant in a medical-malpractice case makes a prima facie showing that there is no genuine issue of material fact, then, as in other civil cases, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Ex parte Elba Gen. Hosp. & Nursing Home, Inc., 828 So.2d 308, 311 (Ala.2001).
“‘To maintain a medical-malpractice action, the plaintiff ordinarily *101 must present expert testimony from a “similarly situated health-care provider” as to (1) “the appropriate standard of care,” (2) a “deviation from that standard [of care],” and (3) “a proximate causal connection between the [defendant’s] act or omission constituting the breach and the injury sustained by the plaintiff.” ’
“Lyons v. Walker Reg’l Med. Ctr., 791 So.2d 937, 942 (Ala.2000) (bracketed language original).”
Cain v. Howorth, 877 So.2d 566, 575-76 (Ala.2003).
In response to the summary-judgment motions filed by Brookwood and Dr. Ap-pell, McGathey did not submit testimony from her own medical expert. Instead, she relied on excerpts from the depositions of PA Rawlings, ORT Nunnally, and RN Forrest. Brookwood and Dr. Appell argued to the trial court that this was not sufficient. McGathey responded that her medical-malpractice action fell into the class of cases in which expert testimony is not necessary to establish a breach of the applicable standard of care. The trial court apparently disagreed with McGa-they.
“In discussing the general rule that requires expert testimony in a medical-malpractice action, this Court has held: ‘A narrow exception to this rule exists “ ‘in a case where want of skill or lack of care is so apparent ... as to be understood by a layman, and requires only common knowledge and experience to understand it.’ ” ’ Ex parte Health-South Corp., 851 So.2d 33, 38 (Ala.2002) (quoting Tuscaloosa Orthopedic Appliance Co. v. Wyatt, 460 So.2d 156, 161 (Ala.1984), quoting in turn Dimoff v. Maitre, 432 So.2d 1225, 1226-27 (Ala.1983), quoting in turn Lloyd Noland Found., Inc. v. Harris, 295 Ala. 63, 66, 322 So.2d 709, 711 (1975))....
[[Image here]]
“... The need for expert testimony ‘is dependent upon whether the average person is able to decide without expert testimony whether or not the procedure followed in any given case falls below the acceptable standard.’ Tuscaloosa Orthopedic Appliance Co., 460 So.2d at 161.”
Bibb v. Center for Pain of Montgomery, P.C., 23 So.3d 1135, 1137-38 (Ala.2009).
McGathey contends that expert testimony is not required to demonstrate that attaching a metal bar to a patient’s arm and hand that is hot enough to burn the skin falls below the acceptable standard of care owed her by the surgical team. For support, McGathey cites Ford v. String-fellow Memorial Hospital, 39 So.3d 184 (Ala.Civ.App.2009), a case containing strikingly similar facts. In Ford, an hour before the plaintiffs surgery, a nurse sterilized the parts of a “wrist-traction tower,” the purpose of which is “to elevate and to hold in place the patient’s hand and wrist as surgery was performed on the patient’s wrist.” 39 So.3d at 186. The nurse allowed the device parts to air-cool in the operating room for the hour before the surgery. Before the procedure began, the plaintiff was placed under general anaesthesia and another nurse and the doctor who performed the surgery assembled the wrist-traction tower and attached it to the plaintiffs arm. “At the conclusion of the surgery, as [the plaintiff]’s arm was being removed from the wrist traction tower, it was discovered that [the plaintiffl’s upper arm, in an area near her tricep that had been resting on the wrist traction tower, had been burned.” 39 So.3d at 187. The plaintiff did not present her own expert testimony in contending that the doctor and the hospital that employed the nurses had breached the standard of care.
*102 In part, the Court of Civil Appeals concluded that
“[w]hether a hospital’s employees are under a duty to properly and sufficiently cool surgical equipment and instruments before their use in surgery, whether the wrist traction tower was not sufficiently cooled after it was sterilized, and whether the heat from the wrist traction tower caused a third-degree burn to [the plain-tiffl’s upper arm are all matters that can be easily understood and determined by the average person without the aid of a medical expert. Simply put, the present case fits within the ‘class of cases “ ‘where want of skill or lack of care is so apparent ... as to be understood by a layman, and requires only common knowledge and experience to understand it...Ex parte HealthSouth Corp., 851 So.2d [33,] 39 [ (Ala.2002) ]. See also Lloyd Noland Found., Inc. v. Haris, 295 Ala. 63, 66, 322 So.2d 709, 711-12 (1975) (expert medical testimony not necessary in case involving burn to leg of patient caused by application of cast that had not been properly cooled).”
39 So.3d at 192-93. In Timmerman v. Fitts, 514 So.2d 907, 913 (Ala.1987), this Court also stated: “There is no requirement that the plaintiff produce an independent expert where the testimony of the defendant, as here, establishes the standard required of him by his profession.” See also Ford, 39 So.3d at 191. McGathey also cites Lloyd Noland Foundation, Inc. v. Harris, 295 Ala. 63, 66, 322 So.2d 709, 712 (1975), in which this Court stated that “[i]t does not require an expert to prove a hot object will burn human skin.”
Brookwood contends that Ford is distinguishable because in Ford the doctor and a hospital nurse assembled the medical device that caused the plaintiffs burns, whereas, in this case, a nurse employed by Alabama Spine and Joint attached the metal bar to McGathey’s hand and arm. Brookwood argues that McGathey needed expert testimony to establish that a Brook-wood employee committed a breach of the standard of care.
This distinction does not undermine the principle articulated by the Court of Civil Appeals. As was the case in Ford, expert testimony was not necessary to establish that there was a breach in the standard of care owed McGathey that resulted in her hand and arm being burned by a metal bar during surgery because such “matters ... can be easily understood and determined by the average person without the aid of a medical expert.” Ford, 39 So.3d at 193. Also, like the testimony of the RN in Ford, the testimony of ORT Nunnally was sufficient to raise a question of fact as to whether that breach was the result of action or inaction by a Brookwood employee. ORT Nunnally, who was a Brookwood employee, testified that when he picked up the metal bar from the sterilization basket and placed it on the sterile table it was so hot that it would have burned him had he not insulated his hand. Nunnally admitted that he could, on his own initiative, cool down a piece of equipment that was too hot to be used. Despite his knowledge, Nunnally did not attempt to cool the metal bar before it was attached to McGathey.
Nunnally also testified that he informed PA Rawlings when she entered the operating room that the metal bar was hot, intending, in his words, “to caution her that it needed to cool before we used it.” Despite his warning, within six minutes of entering the operating room, Rawlings had attached the metal bar to McGathey’s left arm and hand. Nunnally acknowledged that he had a duty to ensure a patient’s safety and that, if he observed anything wrong in the course of a surgery, he was supposed to intervene to protect the pa *103 tient’s well-being, yet he did nothing to stop Rawlings from attaching the metal bar to McGathey’s arm and hand. Finally, Nunnally testified that knowingly using a medical device hot enough to burn skin on a patient would violate the standard of care.
Given the facts in this case and Nunnally’s testimony, we conclude that McGa-they produced substantial evidence creating a genuine issue of material fact as to whether a Brookwood employee violated the applicable standard of care by failing to ensure that a hot medical device was sufficiently cool before it was attached to the patient’s arm and hand. Expert testimony was not required. See Timmer-man, 514 So.2d at 913. Consequently, the trial court’s summary judgment with regard to Brookwood on this issue is due to be reversed.
McGathey’s claims against Dr. Ap-pell, however, are another matter. As Dr. Appell noted in the trial court and as he reiterates on appeal, the undisputed evidence indicates that he was not present in the operating room from the time the metal bar was brought into the operating room through the moment it was attached to McGathey’s arm and hand. Therefore, the evidence does not indicate that he had any knowledge of the temperature of the metal bar at the time of its use, and he played no role in the negligence alleged by McGa-they.
McGathey contends that Dr. Appell is liable through the actions of PA Rawl-ings, who worked under his direction. For Dr. Appell to be vicariously liable for Rawlings’s actions, however, McGathey would have had to demonstrate that Dr. Appell was Rawlings’s master. See Ware v. Timmons, 954 So.2d 545, 549 (Ala.2006) (explaining that the doctrine of respondeat superior stems from a master-servant relationship). It is undisputed that Rawlings was employed by Alabama Spine and Joint and that Dr. Appell was not her direct employer. The situation is similar to the one presented in Ware, in which the plaintiff attempted to hold an anesthesiologist vicariously liable for the allegedly negligent acts of a nurse anesthetist. Id. In Ware, the doctor argued that “he cannot be vicariously liable for the acts or omissions of Nurse Hayes because she was an employee of Anesthesiology & Pain Medicine of Montgomery, P.C., not of Dr. Ware individually.” 954 So.2d at 550. This Court agreed with the doctor, reasoning:
“Because ‘[a] master is a species of a principal,’ an alleged employer not only must possess a right of control, but also must have voluntarily entered into the relationship, that is, had the right to choose—to select and to dismiss—the alleged servant; otherwise, there is no master-servant relationship. Therefore, absent evidence that the alleged master had the power to select and dismiss the servant, there is no proof that a consensual relationship was ever formed.”
954 So.2d at 553 (footnote omitted).
There is no evidence indicating that Dr. Appell hired Rawlings or that he had the power to fire her. Indeed, Rawlings’s deposition testimony indicates that she worked for the physician-practice group, that she had been assigned to assist Dr. Appell for a period, and that she had been assigned to other doctors at other times. In short, McGathey failed to establish that Dr. Appell was Rawlings’s master; therefore, he cannot be held vicariously liable for her actions.
McGathey’s other allegation against Dr. Appell—that he “[njegligently failed to properly formulate and implement a proper, adequate, and safe plan of care, including the use and monitoring of medical products, equipment and instru- *104 merits” — does require expert testimony for its establishment. Whether the safety plan for the care and monitoring of medical equipment employed by Dr. Appell met the standard of care for a physician is not something that ‘“the average person is able to decide without expert testimony.’ ” Bibb, 23 So.3d at 1138 (quoting Tuscaloosa Orthopedic Appliance Co. v. Wyatt, 460 So.2d 156, 161 (Ala.1984)). McGathey did not provide expert testimony concerning this claim, and Dr. Appell’s affidavit did not provide it for her; therefore, McGa-they did not produce substantial evidence of this allegation, and the trial court’s summary judgment in favor of Dr. Appell concerning McGathey’s medical-negligence claims is due to be affirmed.

B. Assault and Battery Claims

McGathey also contends that the trial court erred in entering summary judgments on her claims against Brookwood and Dr. Appell alleging assault and battery. McGathey argues that a plaintiff is permitted to bring more than one type of claim under the AMLA, citing for support Collins v. Ashurst, 821 So.2d 173 (Ala.2001). In Collins, this Court explained:
“[T]he AMLA recognizes the possibility •that more than one type of action may be brought under that act. Specifically, the definitions section, § 6-5-542, which the trial court interpreted to allow only one cause of action, i.e., medical malpractice, states, in pertinent part, that ‘[tjhis definition [for “standard of care”] applies to all actions for injuries or damages or wrongful death whether in contract or tort and whether based on intentional or unintentional conduct’ (Emphasis added.) Thus, the AMLA envisions both tort claims and contract claims, based on either intentional or unintentional conduct. This particular section provides the applicable standard of care that governs all actions against the health-care providers specified in the act; it does not contain language that would lead to the conclusion that the only available cause of action, in contract or in tort, is medical malpractice. We note further that other sections of the AMLA also recognize that more than one type of action for medical malpractice may be brought....
[[Image here]]
“Therefore, based upon the clear language of the AMLA, we hold that the trial court erred in determining that the AMLA allows for only one cause of action, and, consequently, in striking Collins’s counts for assault and battery and trespass.”
821 So;2d at 176-77 (footnote omitted).
McGathey’s citation of Collins is unrelated to the basis upon which the trial court granted the summary-judgment motions. McGathey argues that assault and battery are legitimate claims under the AMLA, even when the defendant’s actions were unintentional. However, the trial court did not grant Brookwood’s and Dr. Appell’s summary-judgment motions because the assault and battery claims are impermissible under the AMLA, but instead because it found that “there is no genuine issue as to any material fact.” The evidence in the record shows, however, that McGathey gave Dr. Appell a signed informed-consent form. Although she argued that she “did not give informed consent,” McGathey has presented no evidence to that effect. Absent substantial evidence demonstrating that she did not give informed consent for the surgery, the trial court correctly entered summary judgments in favor of Brookwood and Dr. Appell as to these claims.

C. Substitution of Fictitiously Named Parties

 McGathey contends that the trial court should have allowed her to amend *105 her complaint to substitute Nunnally and Rawlings for fictitiously named defendants, thereby allowing her claims against them to relate back to the filing of the original complaint. She argues that until she deposed those two individuals, she had no knowledge that they had participated in the negligence that caused her injury. McGathey notes that six days after she deposed Rawlings, she filed her motion for leave to amend her complaint.
“This Court has previously stated that Rule 9(h) and Rule 15(c)(4), Ala. R. Civ. P., ‘ “allow a plaintiff to avoid the bar of a statute of limitations by fictitiously naming defendants for which actual parties can later be substituted.” ’ Ex parte Chemical Lime of Alabama, Inc., 916 So.2d 594, 597 (Ala.2005) (quoting Fulmer v. Clark Equip. Co., 654 So.2d 45, 46 (Ala.1995)). Rule 9(h), Ala. R. Civ. P., provides:
‘“When a party is ignorant of the name of an opposing party and so alleges in the party’s pleading, the opposing party may be designated by any name, and when that party’s true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.’
“Rule 15(c)(4), Ala. R. Civ. P., provides that ‘[a]n amendment of a pleading relates back to the date of the original pleading when ... relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9(h), Ala. R. Civ. P.’
“In order to invoke the relation-back principle of Rule 15(c) in regard to fictitious-party practice under Rule 9(h), a plaintiff
“‘(1) must state a cause of action against the party named fictitiously in the body of the original complaint and (2) must be ignorant of the identity of the fictitiously named party, in the sense of having no knowledge at the time of the filing that the later-named party was in fact the party intended to be sued.’
“Crawford v. Sundback, 678 So.2d 1057, 1059 (Ala.1996).
“ ‘A plaintiff is ignorant of the identity of a fictitiously named defendant when, after exercising due diligence to ascertain the identity of the party intended to be sued, he lacks knowledge at the time of the filing of the complaint of facts indicating to him that the substituted party was the party intended to be sued. Likewise, to invoke the relation-back principle of Rule 15(c), a plaintiff, after filing suit, must proceed in a reasonably diligent manner to determine the true identity of a fictitiously named defendant and to amend his complaint accordingly.’
“Ex parte FMC Corp., 599 So.2d 592, 593-94 (Ala.1992).... Thus, it is incumbent upon the plaintiff to exercise due diligence to determine the true identity of defendants both before and after filing the original complaint. It is also incumbent upon the plaintiff to ‘substitute the named defendant for the fictitious party within a reasonable time after determining the defendant’s true identity,’ and “‘the same policy considerations which require a plaintiff to amend his complaint within a reasonable time after learning the defendant’s true identity also require the plaintiff to proceed in a reasonably diligent manner in determining the true identity of the defendant.” ’ Crawford, 678 So.2d at 1060 (quoting Kinard v. C.A. Kelly & Co., 468 So.2d 133,135 (Ala.1985)....)”
Ex parte Hensel Phelps Constr. Co., 7 So.3d 999, 1002-03 (Ala.2008) (some emphasis omitted and some emphasis added).
*106 Brookwood and Dr. Appell note that the surgery occurred on September 12, 2008, and that McGathey obtained the medical records from her surgery on October 31, 2008. Those medical records stated that Jennifer Rawlings served as the PA during the surgery and that Paul Nunnally was the ORT. Despite this information, McGa-they’s original complaint, filed September 9, 2010, did not name Rawlings or Nunnally as defendants. The defendants argue that the medical records demonstrate that it cannot be said that McGathey was “ignorant of the identity of the fictitiously named party, in the sense of having no knowledge at the time the complaint was filed that the party subsequently named was in fact the party intended to be sued” as is required to invoke the relation-back principle of Rule 15(c), Ala. R. Civ. P., in regard to fictitious-party practice under Rule 9(h), Ala. R. Civ. P. Ex parte Atkinson, 976 So.2d 1001,1003 (Ala.2007).
McGathey concedes that the medical records she obtained contained the names and positions of Rawlings and Nunnally, but she emphasizes that those medical records did not detail the activities of Rawl-ings and Nunnally before or during the surgery. McGathey notes that the answers to the interrogatories she propounded to Brookwood and Dr. Appell in March 2011 provided the names and positions of all the individuals who were present in the operating room for the surgery but that Brookwood’s and Dr. Appell’s answers did not provide any more details concerning the activities of Rawlings and Nunnally before or during the surgery. McGathey argues that “[t]he fact that two relevant names were contained in the list of seven individuals who were present or participated during the surgery did not identify Jennifer Rawlings nor Jeffery Paul Nun-nally as being responsible for [McGathey’s] injury nor did it give [McGathey] sufficient information to name those parties as defendants without further discovery.” McGathey’s brief, at 40. McGathey insists that it was not until she deposed Forrest, Nunnally, and Rawlings that she obtained a clear picture of how she was injured and who was responsible for the injury. Because she moved to amend her complaint almost immediately following the last of those depositions, McGathey contends that her substitution of Rawlings and Nunnally for fictitiously named defendants should have been permitted.
McGathey’s argument mistakenly focuses on when she learned of the specific details of Rawlings’s and Nunnally’s roles in causing her injury rather than on when she knew the identities of those potential parties. Our cases emphasize that Rule 9(h) concerns the identity of a party, not the cause of action against a party. In Weber v. Freeman, 3 So.3d 825 (Ala.2008), this Court summarized several cases that illustrate what is permissible and what is impermissible with regard to the relation-back principle:
“In Marsh v. Wenzel, 732 So.2d 985 (Ala.1998), a patient brought a medical-malpractice action against a surgeon who had removed tissue from her breast but had failed to diagnose it as cancerous. She also sued several fictitiously named parties under Rule 9(h), Ala. R. Civ. P. After she deposed the pathologist who had also examined the tissue and failed to diagnose the cancer, the patient substituted the pathologist for one of the fictitiously named defendants. In Marsh, the patient argued, pursuant to Rule 9(h), Ala. R. Civ. P., that she was ignorant of the identity of the pathologist when she filed her action. ‘However, ... one could not reasonably conclude that she was ignorant of matters — such as the name of the pathologist who examined the tissue samples— that clearly were set forth in her medi *107 cal records.’ 732 So.2d at 990. We concluded that the patient had not been ignorant of the identity of the pathologist but of her cause of action against him and that Rule 9(h) excused only ignorance of the identity of the party against whom a cause of action had been stated in the original complaint. Therefore, this Court held that the patient’s claims were time-barred because she could not have reasonably been ignorant of the pathologist’s identity, and her claims against the pathologist, therefore, did not relate back to her original complaint.
“In Ex parte Snow, 764 So.2d 531 (Ala.1999), the issue was whether a plaintiffs ignorance of a cause of action against a particular defendant is treated the same as the plaintiffs ignorance of the identity of that defendant. In Snow, the patient and her husband brought a medical-malpractice action against the surgeons who performed an operation to alleviate her pain caused by gallstones. They also listed other fictitiously named defendants. After the statute of limitations had run, they sought to substitute the names of two other surgeons who had performed a different operation to remove the patient’s gallbladder. The plaintiffs argued that the substitution of the fictitiously named defendants related back to the date of the filing of the original complaint because, they said, it was not until a deposition was taken that they learned that the two other surgeons had acted negligently. The plaintiff’s admitted that they knew the names of the two surgeons and the procedure they had performed when they filed their original complaint. This Court held although the plaintiffs may not have knoum the significance of the information they had regarding the two surgeons and the operation performed, ‘it was incumbent upon them to learn of that significance’ before the running of the statutory period. 764 So.2d at 537.
“In Harmon v. Blackwood, 623 So.2d 726 (Ala.1993), the personal representative of his son’s estate knew the identity of a treating physician when the original complaint was filed. However, he sought to substitute the treating physician for a fictitiously named defendant. This Court stated:
“ ‘When the plaintiff filed the original complaint against the two named defendants and the fictitiously named defendants number 3 and number 4, he was apparently relying on a discussion with Dr. Edward Conner, a neo-natologist, concerning the involvement in the child’s death of the nurses in the nursery at the hospital and of the obstetrician who had delivered the child. Nonetheless, when a plaintiff knows the name of a physician and the involvement of that physician in the treatment of the patient, it is incumbent upon the plaintiff, before the running of the statutory period, to investigate and to evaluate his claim to determine who is responsible for the injury and to ascertain whether there is evidence of malpractice. In this case, the plaintiff did not do that.’
“623 So.2d at 727 (emphasis added).
“In the present case, Carolyn argues that her substitution of Dr. Weber and The Radiology Group for fictitiously named parties should be allowed because, she says, when she filed her original complaint she was unaware of Jackson’s protocol requiring radiologists to notify emergency-room personnel if they discovered a life-threatening condition in a patient who had left the emergency room. However, Carolyn was not ‘ignorant’ of a relationship that gave rise to a duty. Carolyn knew of the identity of Dr. Weber and The Radiology Group *108 and knew that Dr. Weber had interpreted Samuel’s abdominal radiographs (the only diagnostic test performed on Samuel during his visit to the emergency room) before she filed her action. Because she knew of Dr. Weber’s involvement in Samuel’s treatment, it was incumbent upon her, before the statute of limitations on her claim expired, to investigate and evaluate the claim to determine who was responsible for Samuel’s death.’’
8 So.3d at 832-33 (some emphasis added).
All the cases highlighted in the above-quoted portion of Weber illustrate that McGathey failed to fulfill the duty required to allow an amendment to her complaint to substitute real parties for fictitiously named defendants and to invoke the doctrine of relation back. Because of the medical records she obtained, McGa-they knew Rawlings’s and Nunnally’s names shortly after her surgery and knew that they were involved in her treatment during the surgery. Despite this knowledge, there is no indication that, in the nearly two years between the time McGa-they received the medical records and the time she filed her complaint, McGathey performed any investigation to determine whether either of those individuals was responsible for her injury. Even after McGathey filed her complaint in September 2010, it was not until late 2011 that she ascertained the roles of the two individuals in the surgery. Based on the record, it cannot be said that McGathey “exercise[d] due diligence to determine the true identity of the defendants” either before or after the filing of her original complaint. Ex parte Hensel Phelps Constr. Co., 7 So.3d at 1003. Accordingly, the trial court did not err in refusing to allow McGathey to amend her complaint to substitute Rawl-ings and Nunnally for fictitiously named defendants in her original complaint.

IV. Conclusion

Based on the foregoing, we conclude that McGathey produced substantial evidence of negligence on the part of Brook-wood employee Nunnally; therefore, the summary judgment is due to be reversed insofar as it was entered in favor of Brook-wood. We affirm the summary judgment in favor of Dr. Appell.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PARKER, MAIN, WISE, and BRYAN, JJ., concur.
MOORE, C.J., and BOLIN, J., concur in the result.
STUART, MURDOCK, and SHAW, JJ., concur in part and dissent in part.

. Nunnally testified that he could not recall exactly what he used to transfer the metal bar from the basket to the table.

. Forrest testified that the "sterile team” consists of members of the surgical team who are permitted to touch the sterile equipment during the surgery.

. It is unclear from the record exactly what type of legal entity Alabama Spine and Joint is.

. Rawlings testified that she did not remember any of the details of this particular surgery.

. Forrest testified that Carra was present in the event there were questions about how to use the Spider Limb Positioner because it was a new piece of equipment at Brookwood Medical Center.

. Other answers to the interrogatories provided a few details of some of the activities of the surgery participants.